SORENSEN *et al. v.* KEYSER.

*(Circuit Court of Appeals, Fifth Circuit.* May 30, 1892.)

No. 28.

DEMURRAGE—PROCURING CARGO—CHARTER PARTY—DROUGHT.

A ship was chartered in Liverpool to carry a cargo of lumber from Ship island, the charter party providing that "in the computation of days allowed for delivering the cargo shall be excluded any time lost by reason of droughts, floods, storms, or any extraordinary occurrence beyond the control of the charterers." *Held,* that the word "drought" could not include a drought prevailing at the time of the charter along the tributaries of the Pascagoula river, and which prevented the charterers from obtaining the timber, especially as it was the custom of the port to prepare cargoes at Moss Point, between which place and Ship island no drought could affect the delivery; and parol evidence was not admissible to prove that such a drought was contemplated by the parties.

Appeal from the District Court for the Southern Division of the Southern District of Mississippi.

In Admiralty. Libel by Jacob E. Sorensen and others, owners of the bark Urania, against W. S. Keyser, for demurrage. Libel dismissed. See 48 Fed. Rep. 117. Libelants appeal. Heard on motion by the appellee to be authorized to take testimony as to the meaning of the word "drought" in the charter party, as understood by the parties. Overruled.

*Rouse & Grant,* for libelants.

*Ford & Ford* and *John C. Avery,* for respondent.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. This case is before this court on an appeal from the district court, southern district of Mississippi, in a suit brought in admiralty on a charter party contracting for the ship Urania to take a cargo of timber from Ship island or Pensacola, which charter party contains the following clauses:

"The act of God, restraint of princes and rulers, the queen's enemies, fire, floods, droughts, strikes, or any extraordinary occurrence beyond the control of either party, and all and every other dangers and accidents of the seas, rivers, and navigation, of what nature and kind soever, during the said voyage, excepted." "In the computation of the days allowed for delivering the cargo shall be excluded any time lost by reason of droughts, floods, storms, or any extraordinary occurrence beyond the control of the charterers."

The respondent in his answer alleges that at the time the said vessel reported for cargo under the terms of said charter there was an unusual drought, general and extensive, prevailing throughout the whole section of country from which timber is obtained for the loading of ships at Ship island, Moss Point, and other points in that vicinity, which drought continued for a long while, and prevented respondent from obtaining cargo for the loading of said vessel, notwithstanding he had made arrangements for procuring cargo for her, and would have procured the same in ample time to have loaded her within the said period of 27 working days but for the said drought. A further examination of the record shows that the contention between the parties to the suit is as to

whether the drought contemplated by the charter was the drought in and about Moss Point and Ship island affecting the delivery of cargo to the ship, or was a drought which prevailed in the country where timber was produced or procured, which hindered the shippers from obtaining cargo to deliver to the ship. The case is now brought before the court on the motion of the appellee to be authorized and empowered to take further proof in support of the evidence set up in the answer herein filed, and especially to show that the word "drought" used in the charter party sued upon and filed in this case was understood by both parties to the said contract to mean and comprehend drought existing in rivers and streams tributary to Pascagoula river; and one of the reasons adduced for making the application is that the meaning of the word "drought" is, under the evidence and the decision heretofore rendered by this court, ambiguous and technical, so as to render a decision thereof unsatisfactory and difficult.

It seems that the case of *The India*, 49 Fed. Rep. 76, (decided by this court at the present term,) is in most respects similar to the instant case; and in that case we held that where a charter party allows a certain number of days for the delivery of cargo alongside of a vessel, and excludes from computation therein all time lost by reason of flood, drought, storm, and any extraordinary occurrence beyond the control of the charterers, such exclusion cannot apply to time lost by the charterer in failing to procure, and have ready at the usual place of storage, a cargo of lumber on account of the drought which was prevailing before the chartering of the ship, and which affected the rivers flowing through the country from which the cargoes are ordinarily procured, so that logs were not floated down; and Judge LOCKE, in giving the opinion of the court, said:

"It is urged in behalf of libelants that it was well known that the timber of the contemplated cargoes came from the headwaters of the rivers, and that frequently droughts prevented getting it down the streams to the mills where it was prepared for shipment, and that it should be presumed that the charter party was made with that knowledge, and the drought clause should therefore be held to apply. We do not think so. It does not appear that libelants had, in the streams or rivers affected by the drought, any timber which they were unable to get down, but it does appear that they had made contracts which had not been filled, and that they had never accepted, received, or paid for the timber for this cargo, and that the delay was not in not delivering but in not procuring it. Such construction as is asked by libelants would completely revolutionize the law of shippers and shipowners; make the shipowner responsible for what was plainly the duty of the shipper; excuse the shipper of grain for the detention of a vessel at New Orleans on account of seasons of drought on the wheat fields of the northwest, and the shipper of coal from Philadelphia for strikes months before in the coal mines of Pennsylvania, of which the shipper had knowledge at the time of chartering a vessel in Liverpool. It can not be assumed that the shipowner assumed such risks and responsibility without the most direct and unequivocal language in the charter party. In the case of *Hudson* v. *Ede*, L. R. 2 Q. B. 566, the shipper was excused only because, according to the custom of the port of Sulinah, the grain was stored higher up the river at Galatz, and on account of ice it could not be brought down; but in this case the custom is shown to be the other way,—that cargoes are

to be collected and prepared at Moss Point. In *Grant* v. *Coverdale*, 9 App. Cas. 470, cited by appellants, it is said: 'There was no contract as to the particular place from which the cargo was to come, no contract as to the particular manner in which it was to be supplied, or how it was to be brought to the place of loading, and that, therefore, it could not be supposed that the parties were contracting about any such thing.' It cannot be denied that unless those words of exception, according to their proper construction, take this case which has happened out of the demurrage clause, the mere fact of frost or any other thing having impeded the performance of that which the charterer, and not the shipowner, was bound to perform, will not absolve him from the consequences of keeping the ship too long. It is true that in that case the term 'loading' was used, but in the present case the language of the section relied upon would, we consider, as strongly confine the loss to the exclusion of those days which were lost in delivering, not in procuring. In that case the loading was prevented because the ice prevented bringing the iron through the canal to the dock, but the cause was considered too remote to excuse the shipper. In this case the parties could not deliver because they had not procured, and the reason of the decision that the cause was too remote to have it presumed that the owners had contracted against such contingency holds with more force than in that. The libelants themselves show that the custom of the port is that cargoes are collected and prepared at Moss Point, between which place and Ship island no drought can affect communication. Can it be reasonably presumed that in making such charter the owners were aware of the fact that the term could have no force unless it were extended to the woods of Louisiana or Mississippi, and intended to take the chances of a drought there? We are clearly of the opinion that no such intention can be presumed from the language of the contract; general custom and usage are directly opposed to such construction, and we find nothing in local custom or usage to demand it."

This decision cannot be in any wise taken as indicating that in the construction of the contract, with regard to the meaning of the words used therein, evidence was necessary or could be considered as to what was understood by both or either of the parties at the time of the contract as to the meaning of plain language used therein. Applications to take evidence on appeal are not granted as a matter of course. *The Sallie Magee*, 3 Wall. 454; *The Gray Jacket*, 5 Wall. 342. On such applications the court considers as to whether the proposed evidence is admissible. *The Ocean Queen*, 6 Blatchf. 24. Parol evidence is inadmissible to show how all the parties in interest understood the transaction from its commencement to its consummation, (*Bailey* v. *Railroad Co.*, 17 Wall. 96,) or to incorporate a custom into an express contract in writing, the terms of which are neither technical nor ambiguous, (*Partridge* v. *Insurance Co.*, 15 Wall. 573.) Proof of circumstances surrounding the transaction is admissible to ascertain the subject-matter, but not to add to the contract. *Bradley* v. *Packet Co.*, 13 Pet. 89; *Maryland* v. *Railway Co.*, 22 Wall. 105; *U. S.* v. *Peck*, 102 U. S. 64. In this present case we understand the object of taking evidence to be to bring parol evidence before the court as to what the parties meant by the use of certain words used in the charter party, which words are not ambiguous, and have a well-known and understood meaning, and to enlarge the scope and construction of the written contract beyond the language and terms thereof. This, we think, would be clearly inadmissible, and for this reason the motion is denied.