THE CONSOLIDATED COAL AND LIME COMPANY
v. MERCER.

[No. 1,921.   Filed Oct. 15, 1896.   Rehearing denied Dec. 30, 1896.]

CONTRACT.—*Interpretation.*—*Instruction.*—C entered into a written contract with M to furnish 1,200,000 brick to be used in the construction of a sewer which M was under contract to build, delivery to commence about April 1, at the rate of not less that 300,000 brick per month. It was well known to C that M was under contract to complete the sewer by August 1, but this fact was not inserted in the contract. *Held,* on the trial of an action brought by M against C, for failure to furnish the brick in accordance with the contract, that it was erroneous to instruct the jury that it was the duty of C to furnish the whole of said 300,000 brick, so to be delivered each month, early enough in the month to enable M, by the exercise of reasonable diligence, to lay the same in the sewer within the month. *pp. 505-510.*

SAME.—*Construction.*—*Extrinsic Facts.*—The rights plainly given by the terms of a contract are not to be reduced or lessened by construction unless it shall appear by extraneous facts that such reduc-

tion is essential to the accomplishment of the object for which the contract was made.   *p. 510.*

From the Marion Superior Court. *Reversed.*

*James E. McCullough* and *Henry N. Spaan,* for appellant.

*John S. Duncan, Charles W. Smith* and *Henry H. Hornbrook,* for appellee.

GAVIN, J.—Appellee recovered damages for appellant's failure to furnish the brick called for in the following contract:

"INDIANAPOLIS, IND., March 3, 1893.
MR. WM. R. MERCER:

Dear Sir: We hereby agree to furnish you 1,200,000 brick for your sewer on East street at seven dollars and fifty cents ($7.50) per M. delivered on the street along the line of your work as directed. The brick to be from 2 3-8 to 2 1-2 inches thick, and 8 to 8 1-2 long, and acceptable to the city engineer. Delivery to commence about April 1st, at the rate of no less than 300,000 brick per month. Settlement to be made the 3d day of each month for all brick delivered the month previous. Respectfully,
                    CONSOLIDATED COAL AND LIME COMPANY,
                                        AUG. M. KUHN."

"I accept the above proposition.   W. R. MERCER."

The court gave the jury the following instruction:

"The written contract must be construed in the light of the circumstances surrounding the transaction as known to both parties. If you shall believe from the evidence in the cause that at the time the written contract was entered into, if you shall find it was entered into, the defendant knew that the plaintiff had entered into a contract with the city for the construction of a sewer; that the said brick was con-

tracted to be furnished by the defendant for the construction of the sewer; that by the terms of the contract the plaintiff was required to complete said sewer by the 1st of August, and this fact was then known to the defendant, then I instruct you that by the proper construction of such contract between plaintiff and defendant it was the duty of the defendant to furnish the whole of said 300,000 brick, so to be delivered, each month, early enough in the month to enable the plaintiff, by the exercise of reasonable diligence, to lay the same in the sewer within such month."

The correctness of this construction of the contract is the question presented for our determination.

It will be noted that the only extraneous facts and circumstances by the light of which we are, according to this instruction, to construe the contract, are that the contract for the sewer called for its completion by August 1st, and that this was known to appellant.

Counsel upon both sides lay no stress upon the words of the contract "as he may direct," presumably confining them to the place of delivery. We shall, therefore, so regard them here.

It is conceded by the learned counsel for appellee that if this were a contract for a general sale and delivery the appellant would have been entitled to the entire month for the delivery of each 300,000 brick, but it is insisted that because these brick were to be furnished for use in this special sewer which was to be completed by August 1st, therefore, the parties must be deemed to have intended a delivery of the last 300,000 in time for them to have been laid prior to that date, and that since the contract prescribes no different rule for the other months, therefore, the same intention must be held to be indicated as to them.

Counsel further concede that they may not, by

parol, vary the terms of the written agreement, but they claim that "the words may not appear to have any ambiguity whatever in their meaning on the face of the contract, and yet when applied to the facts of the particular case may have a very different meaning from their natural import." They say: "It is not our attempt to introduce new words into the contract; only to discover what was the intention of the parties in using the language which they did use."

Much stress is laid upon the case of *Bradley* v. *Steam-Packet Co.*, 13 Peters 89, where under a contract to hire the boat, Franklin, "until the Sydney is completed," the defendants were permitted to show that they were mail contractors engaged in carrying the mails, using the river so long as the absence of ice would permit, and transporting the mails by land when navigation closed, and that they were then building the Sydney for use in such business; all of which facts were known to plaintiffs. This evidence was held receivable to show that the contract was terminable when navigation on the river closed, although the Sydney was not yet completed. The recognized legal principle upon which the decision is based is that extrinsic evidence is admissible to enable the court to apply the contract to the subject-matter; the court saying, however, that the "subject-matter" extends beyond the mere designation of the thing or corpus upon which the contract operated and includes the circumstances which accompany the transaction.

This application of the principle by which extrinsic evidence is receivable to determine and identify the subject-matter of the contract is an extreme one, although the basic principle itself is thoroughly established, and three of the justices, including Judge Story, dissented from such application.

In the later cases to which our attention has been

called, wherein the case is cited, it has been to sustain the general proposition that the surrounding circumstances are admissible to ascertain the subject-matter. *Sorensen* v. *Keyser*, 2 C. C. A. 92, 51 Fed. 30; *U. S.* v. *Peck*, 102 U. S. 64.

While some of our own decisions, as well as outside authorities, seem to hold that evidence of the situation of the parties and surrounding circumstances is always admissible to aid in ascertaining the true meaning of a contract, later cases in our Supreme Court declare the law to be that "if the words of the instrument are clear in themselves it must be construed accordingly," and seem to limit the right to introduce evidence of extraneous facts and circumstances (for the purpose of construing, not applying, the contract) to those cases where the terms employed are ambiguous, or susceptible of more than one meaning. *Cravens* v. *Eagle Cotton Mills Co.*, 120 Ind. 6; *Olds Wagon Works* v. *Coombs*, 124 Ind. 62; *Fidelity, etc., Co.* v. *Teter*, 136 Ind. 672.

The members of the court are not agreed as to whether this contract is such as that the extraneous circumstances may be resorted to for the purpose of giving to it any other meaning than that each month is allowed for the delivery of the 300,000 brick, but we are all agreed that, assuming for the purpose of this case that the rule declared by counsel is applicable to the contract in hand, this would not be strong enough to sustain the instruction given. There is not in the extrinsic facts thus assumed by it sufficient force to require the interpretation adopted by the court. Construed as claimed by appellee it would read in legal effect,—"We agree to furnish for your main East street sewer which you are under contract to complete by August 1st, 1,200,000 brick; delivery to commence about April 1st at the rate of not less than 300,000 per

month." The extrinsic facts, the existence of which are required by the instruction, and which we have incorporated in the contract above, do indeed indicate the strong desirability upon the part of appellee of having the brick in time to complete his contract, and the probability that the parties expected them to be so furnished; yet, upon the facts required by the instruction, it does not appear but that the contract might have been fully completed on time, with the first 300,000 all on the ground by May 1st, the second lot all there by June 1, the third by July 1, and the last during that month in time to be laid before August 1.

It does not appear that when the contract was entered into appellant knew when the work would be commenced, nor how rapidly it would progress. It does not appear that it was necessary to the completion of the contract on time that any work should be be done in April.

We do not think it can fairly be required of appellant, that because it knew appellee was to complete his sewer by August 1st, appellant must furnish the brick at such times and in such quantities as would be desirable to appellee. It is to be presumed that appellee, before he made his contract, determined when and in what amounts he would need them and so provided in the writing. Had he intended to receive, and appellant to deliver, the brick, so that each lot could have been laid each month, then this provision should have been incorporated in the agreement. It is now too late to call upon the court to insert for his benefit this desirable provision.

To require appellant to furnish the brick so that, through the exercise of diligence, the contract might be completed by the time fixed, is the utmost which the extrinsic facts would justify. They are not sufficient, as we view them, to authorize the court to say

as a matter of law, that by reason of their existence the appellant must be deemed to have agreed to furnish each 300,000 brick so that they might be laid in that month.  When parties make a written contract the terms should be embodied in it at the time.  It might well be, that had this requirement been written into the contract, the appellant would not have acceded thereto.  It was entitled to a voice in the creation of the contract.  With a knowledge of the character of the articles being bargained for, it is doubtless true that the parties did not expect that the entire 300,000 brick would be dumped in on the last day of the month.  Yet, by reason of the uncertainty as to his ability to procure so many brick within so short a time, appellant may have been unwilling to bind itself more definitely than to furnish them during the month, thus giving itself that much leeway in obtaining them.  The right apparently given it by the terms of the instrument are not to be reduced and lessened by construction, in any event, unless such reduction shall appear by the extrinsic facts to have been known to it at the time to be essential to the accomplishment of the object for which appellee made the contract.  If it was to appellee a mere matter of convenience or profit to so have the contract, or if its necessity was not at the time of its execution known to appellant, then appellee is not entitled to have it interpolated into the contract by construction.  It is the province of the parties and not of the courts to make their own contracts.

By adopting appellee's construction we do more than ascertain the subject-matter and apply the contract to it.  We, in effect, add new terms to it.  To do so is, as was said in *Shipman* v. *Saltsburg Coal Co.*, 10 C. C. A. 311, 62 Fed. 145, to impose upon it a distinct and unexpressed obligation.

The Consolidated Coal and Lime Company *v*, Mercer.

We quote as pertinent to the question here decided the following from the opinion of Lord Denman in *Aspdin* v. *Austin*, 5 Adol. & El. (N. S.) 671, which was approved by the United State Supreme Court in *Maryland* v. *Railroad Co.* 22 Wall. 105:

"Where parties have entered into written engagements with express stipulations, it is manifestly not desirable to extend them by any implications. The presumption is that, having expressed some, they have expressed all the conditions by which they intend to be bound under that instrument. It is possible that each party to the present instrument may have contracted on the supposition that the business would in fact be carried on, and the service in fact continued, during the three years, and yet neither party might have been willing to bind themselves to that effect; and it is one thing for the court to effectuate the intention of the parties to the extent to which they may have, even imperfectly, expressed themselves, and another to add to the instrument all such covenants as upon a full consideration the court may deem fitting for completing the intentions of the parties, but which they, either purposely or unintentionally, have omitted. The former is but the application of a rule of construction to that which is written; the latter adds to the obligations by which the parties have bound themselves, and is of course quite unauthorized, as well as liable to great practical injustice in the application."

Judgment reversed.