## INGRAM–DAY LUMBER CO. v. SCHULTZ.
### No. 4310.

Circuit Court of Appeals, Seventh Circuit.
Dec. 3, 1930.

A jury was waived in writing. The court made special findings of the facts, and they are quite voluminous by-reason of the fact that the letter and telegrams which constitute the contract are fully set forth. With the exception of minor details, which are not material to the determination of the questions presented, the terms of the contract are contained in a telegram, dated January 28, 1925, from Schultz to appellant, which is as follows:

"As per your request of the twenty-sixth you may cancel our order of January twenty-second and substitute our order of this date for six thousand six hundred and thirty-five southern pine piles, peeled or unpeeled at your option, from turpentined, or round, or mixed timber at your option. Lengths as per our letter of January twenty-second, and the schedule attached. Specifications as per specification sheet attached. Shipments to begin in one week, or sooner if possible, and to be completed by April twenty-first next. Price twenty-five cents per lineal foot, freight allowed to Detroit. Terms—payment eighty per cent of value at loading point on receipt of invoice and bill of lading; balance as soon as proper freight deduction is ascertained. All in net cash, and to be legally guaranteed by Continental Credit Trust. You to furnish requested bond for performance of contract. All piles to be consigned as per our letter of January twenty-second Inspection at loading points at our expense."

Appellant declined to agree to give bond, and none was given. L. D. Leach & Co., of Chicago, was substituted for Continental Credit Trust; and in the last sentence the word "fair" was inserted before the word "inspection."

The letter of January 22 from Schultz to appellant, to which reference is made in the above telegram of January 28, was introduced in evidence as Jx9. It contained the lengths of the piling ordered, but these were subject to variations which might be caused by including intermediate lengths, and which necessitated Schultz to notify appellant in ample time for shipment. The letter also contained complete specifications, concerning which there is no controversy as to interpretation, except as to the following sentence: "The diameter 2' from the butt of all piles to be not less than 12"."

The only other controversy as to the interpretation of the contract relates to the sentence in the telegram which reads as follows: "Shipments to begin in one week, or

William H. Armbrecht, of Mobile, Ala., and Thomas M. Priestley and Vroman Mason, both of Madison, Wis., for appellant.

M. F. Gallagher, S. M. Rinaker, and E. B. Wilkinson, all of Chicago, Ill., for appellee.

Before ALSCHULER, SPARKS, and ANDERSON, Circuit Judges.

SPARKS, Circuit Judge.

Appellee sued appellant for breach of contract for failure to deliver piling in pursuance of a contract which was entered into by appellant and appellee's decedent, hereinafter referred to as Schultz. Appellant counterclaimed, demanding the purchase price of such piling as was delivered.

sooner if possible, and to be completed by April twenty-first next."

Upon the facts found, the court concluded:

"1. That under the terms of the contract between plaintiff's intestate and the defendant, the defendant was required to commence shipping piling within one week from January 30, 1925, and was required to make a series of shipments, reasonable in amount and at reasonable times, in the light of defendant's capacity for production and shipment, the needs of plaintiff's intestate, and the necessity for avoiding congestion of shipments beyond its ability to procure cars and the prompt dispatch of said cars to destination, as well as in the light of the total number of piling to be shipped.

"2. That in failing to ship a substantial number of piling in excess of 2,214 by March 25, 1925, and in excess of 2,367 by March 30 and April 7, 1925, the defendant materially defaulted in the performance of its contract.

"3. That under the terms of said contract plaintiff's intestate was required to pay therefor car by car.

"4. That the specifications under the said contract were and are not ambiguous.

"5. That under the terms of said contract defendant was required to ship piling, the minimum diameter of which measured not less than 12″ when measured at a point 2′ from the butt.

"6. That said contract required that plaintiff's intestate furnish to defendant schedules of lengths at reasonable times, in the light of defendant's needs and the status of its production shipment under the contract.

"7. That defendant was entitled to an extension of time, from April 21, April 28, within which to complete shipments, in view of the uncertainty existing from March 26 to April 4, of the dimensions of the products which would be ultimately taken by plaintiff's intestate.

"8. That the measure of plaintiff's damage is the difference between the contract price and the market value of piling like that specified in the contract at the time when, and place where, they should have been delivered.

"9. That plaintiff's intestate performed all things required of him to be performed under the said contract.

"10. That on April 7, 1925, plaintiff's intestate, under the circumstances of this case, had a right to offer to and, in fact, to apply the amount owing by him to the defendant for piling shipped in reduction of the damages sustained by plaintiff's intestate.

"11. That the defendant breached said contract by failing to ship 4,268 piles, having 318,700 lineal feet as required by the contract.

"12. That by reason of defendant's defaults under said contract, plaintiff's intestate suffered damage in the sum of $15,935.

"13. That defendant is entitled to have offset against the damages sustained by plaintiff's intestate, the sum of $6,590.25, which amount it was stipulated by the parties was the amount actually withheld by plaintiff's intestate and applied in reduction of his damages.

"14. That plaintiff is entitled to judgment her ⁊gainst the defendant in the sum of $9,3⸗ ⸗⸗, with her costs to be taxed.

"15. That defendant's counterclaims should be dismissed."

■■ There were thirteen points raised and discussed by appellant, and all but six present questions of fact concerning which there was conflicting evidence, and these were determined adversely to appellant. Another point relates to the diameter of the piles. In this respect appellant contends that a diameter of 12 inches at a point 2 feet from the butt means average diameter. Ordinarily the interpretation of language raises a legal question, but appellant offered evidence of custom to vary the ordinary meaning of apparently plain language. This was met by contradictory testimony on the part of appellee, and it thus became a question of fact, which was determined adversely to appellant.

Where a case is tried by the court, a jury having been waived, its findings upon questions of fact are conclusive in the courts of review. Errors alleged in the findings of the court are not subject to revision by this court if there is any evidence upon which such findings can be made. Dooley v. Pease, 180 U. S. 126, 21 S. Ct. 329, 45 L. Ed. 457; Hathaway v. First National Bank, 134 U. S. 494, 10 S. Ct. 608, 33 L. Ed. 1004; Stanley v. Supervisors, 121 U. S. 535, 7 S. Ct. 1234, 30 L. Ed. 1000.

■ The other points raised involve questions of law. Appellant contends that the court erred in its conclusions of law, in that it did not construe the contract in such manner as to permit appellant, after having shipped a part of the piling within a week from January 30, 1925, to ship the remaining piles at any time on or before April 21,

1925. In other words, it insists that it was optional with appellant as to when the remaining piles should be shipped, provided they were all shipped not later than April 21, 1925. In support of this contention, it relies upon the following propositions of law:

(1) Where a contract provides for delivery within a certain time, or before a certain date, the party by whom the first act in performance of the contract must be done has the choice of the date or dates of performance, provided such date is within the period permitted by the contract; and, in making such choice as to date of performance, such party may consult his own convenience. Dingley v. Oler, 117 U. S. 490, 6 S. Ct. 850, 29 L. Ed. 984; Vogt Bros. Mfg. Co. v. Sloss-Sheffield Steel & Iron Co. (C. C. A.) 297 F. 54; Hunt v. Stimson (C. C. A.) 23 F.(2d) 447; In re Malko Milling & Lighting Co. (D. C.) 32 F.(2d) 825; Harman v. Washington Fuel Co., 228 Ill. 298, 81 N. E. 1017.

(2) Previous and contemporary transactions and facts may be very properly taken into consideration to ascertain the subject-matter of a contract and the sense in which the parties may have used particular terms, but not to alter or modify the plain language which they have used. Consolidated Coal & Lime Co. v. Mercer, 16 Ind. App. 504, 44 N. E. 1005; Shipman v. Saltsburg Coal Co. (C. C. A.) 62 F. 145; North American Oil Co. v. Globe Pipe Line Co. (C. C. A.) 6 F.(2d) 564; Bahnsen & Co. v. Leaf, 203 App. Div. 618, 197 N. Y. S. 160.

These principles are sound, and they are based upon the assumption that the language of the contracts to which they are to be applied is certain and unambiguous. If, however, the language used is uncertain and ambiguous, then, according to the principle stated, previous and contemporary transactions and facts may be very properly taken into consideration to ascertain the intention of the parties in respect thereto.

The portion of the contract which gives rise to this discussion relates entirely to the delivery of the piling, and is as follows: "Shipments to begin in one week or sooner if possible and to be completed by April twenty-first next." Whether or not this language is uncertain and ambiguous in its meaning must be determined without the aid of extrinsic facts. Appellant's interpretation of it has already been expressed in the foregoing opinion; but this interpretation is denied by appellee, who claims that the language used clearly contemplates a series of shipments, and is rendered uncertain and ambiguous by reason of the fact that the dates and amounts of the shipments are not expressed. In this contention we are convinced that appellee should prevail. The language used clearly contemplates a series of shipments. The fact that extreme haste is expressed in providing for the first shipment does not warrant one in believing that it was the intention of either party to defer the other shipments until April 21; but, on the contrary, it supports the contention that a series of shipments was intended. The magnitude of the undertaking likewise contributes to this theory, for, in order to complete the contract by April 21, it would require the shipment of an average of 100 piles a day, exclusive of Sundays. In this respect we hold that the contract was ambiguous and uncertain, and that the trial court very properly received in evidence previous and contemporary transactions and facts in order to determine the intention of the parties as to the dates and amounts of shipments.

■ The evidence revealed that early in January, 1925, Ford Motor Company of Detroit was contemplating the purchase of a large amount of piling, and that Schultz was trying to secure the order. He informed appellant of this fact by a letter, in which he also stated that the order would approximate 5,700 piling, and that it would probably have to be divided on account of time; and he therein asked appellant how much it could handle in three months' time, and when it could commence loading. Appellant wired Schultz on January 13 and 19 that it could handle the entire order and complete shipment in forty-five days, and could begin shipments one week after receipt of order. On January 21 Schultz wired appellant that he had taken the order from Ford Motor Company, to be completed in ninety days, and had given a $50,000 bond to secure the performance. This telegram was confirmed by a letter of the same date, which was received by appellant, and in which Schultz informed appellant that this was work that the Ford Motor Company was pushing rapidly, and that, on the strength of appellant's telegrams, through Clolinger, that it could furnish this entire bill in forty-five days, and on the strength of appellant's later telegram in answer to his wire asking it to be sure to make appellant's time safe—that appellant could furnish all piles in sixty days complete—he made his time to the Ford Motor Company ninety days, agreeing to make his shipments in accordance with the copy of a shipping schedule which was inclosed and which was incorporated in Schultz's contract with Ford Mo-

tor Company. This shipping schedule, referred to as Exhibit B, was also inclosed with and made a part of Joint Exhibit Jx9, but the court found that it was not a part of the contract, by reason of the fact that it was not incorporated in appellant's telegram of January 26, which is Joint Exhibit Jx19.

This shipping schedule provided that 500 piles should be shipped on or before February 3, 1925, and that 500 piles should be shipped each week thereafter up to and including March 10, and that thereafter 600 piles should be shipped each week up to and including April 14, and that during the following week, on or before April 21, 625 piles should be shipped.

As a matter of fact, Schultz's order of January 22, which included Exhibit B, was accepted by appellant in a letter to Schultz, bearing no date, but introduced in evidence as Exhibit Jx15A. This letter contains the following: "We accept this order and guarantee full and complete delivery to you, your successors or assigns. Full delivery to be made at Detroit not later than April 21, 1925, in accordance with shipping schedule marked Exhibit B and made a part of your order above referred to." Appellant's telegram of January 26 is a request that Schultz cancel this order by wire, and substitute the order as dictated by appellant in said telegram. It differs from Schultz's order of January 22 in the following particulars: It provides that the piles shall be of Southern pine, peeled or unpeeled, turpentined, round or mixed, at appellant's option; it provides for a fair inspection at loading point at Schultz's expense; it omits the cash discount on initial payments; and it makes no reference to schedule B, which is the specific schedule of shipments. In all other material respects the orders were the same.

Up to this time appellant had never made objection to the schedule of shipments contained in Exhibit B, although telegrams had been sent back and forth by the parties with great frequency. From this time on a very great number of telegrams and letters passed between the parties, in which those sent by Schultz charged appellant with being behind in its weekly shipments, and those sent by appellant charged Schultz with delaying the shipments by reason of unfair inspection and deferred specifications. During these proceedings appellant never claimed, until April 4, that it was not bound to make weekly shipments, when it notified Schultz by letter that it was not bound to ship at any specific rate, but merely to complete the shipment by April 21.

Under all the circumstances we are convinced that the court's conclusion as to the intentions of the parties in making the contract is correct, and it is fully supported by the facts found. The court did not hold that appellant was bound by Exhibit B in making the shipments, but held that appellant, with knowledge of all the facts, was bound to approximate that schedule as nearly as it could reasonably do so under all the circumstances of the situation. This we hold to be the correct view, and it is supported by the following authorities: North American Oil Co. v. Globe Pipe Line Co. (C. C. A.) 6 F. (2d) 564; Lukens Iron & Steel Co. v. Hartmann-Greiling Co., 169 Wis. 350, 172 N. W. 894; North Coast Lumber Co. v. Great Northern Lumber Co., 144 Minn. 304, 175 N. W. 547.

We have carefully examined the authorities cited by appellant on this subject, and in each instance, save one, there was no ambiguous language used. In the case of Consolidated Coal & Lime Co. v. Mercer, 16 Ind. App. 504, 44 N. E. 1005, appellant agreed to furnish 1,200,000 brick for a sewer, delivery to commence about April 1 at the rate of no less than 300,000 a month. The court held that the extrinsic fact that plaintiff's contract called for completion of the sewer by August 1, and that this fact was known by defendant, and that he had no further information relating to plaintiff's situation, would not justify the court in construing such contract as an agreement to furnish 300,000 brick early enough in each month to enable plaintiff to lay them within the same month, but would, at most, require delivery of the whole amount of brick in time to complete the sewer by August 1. The extrinsic facts did not show that the sewer could not have been completed by August 1 if each month's brick were there at the end of the month. The court further said that the members of the court were not agreed as to whether the contract was such that the extraneous circumstances might be resorted to, but they were all agreed that, if resorted to, they were not sufficient to warrant the instructions. In the instant case the facts are not lacking to warrant the conclusion. The court has specially found the facts, and those findings are conclusive.

■■ That appellee is not estopped from insisting that the court properly construed the contract is well settled. The fact that the court discarded Exhibit B as a part of the contract is not a fatal variance, nor can it be considered a failure of proof. Mente v. De Witt Rice Mill Co. (C. C. A.) 251 F. 252;

364

North Coast Lumber Co. v. Great Northern Lumber Co., 144 Minn. 304, 175 N. W. 547.

The court having found that appellant defaulted in making reasonable shipments, and that appellee's intestate sustained thereby damages in excess of the amount due from him to appellant, deceased was entitled to withhold payment of said amount and apply it in partial satisfaction of his damages. Burgie v. Hicks (D. C.) 203 F. 340; Norwood Paper Co. v. Columbia Paper Bag Co. (C. C. A.) 185 F. 454.

In view of all the circumstances, the court did not abuse its discretion in refusing to permit appellant to file an amended answer during the trial, and we cannot disturb the judgment for this reason.

There was no error in excluding testimony with relation to an alleged telephone conversation between appellant's manager, Mitchell, and appellee's intestate, whose death occurred prior to the trial. St. Wis. 1929, § 325.16; Langsenkamp v. Broscalsa Chemical Co. (D. C.) 21 F.(2d) 207. Nor was there error in refusing to admit in evidence a telegram from inspector Ray to his employer, Robert W. Hunt & Co. He was present at the trial and testified to practically all matters as were contained in his telegram, and this would render the alleged error harmless.

It is not necessary to consider the other errors assigned. They relate to the weight of the evidence, and such matters are conclusively settled by the court's findings.

Judgment affirmed.