# KELLEY, ADMINISTRATRIX, v. GRAND TRUNK WESTERN RAILWAY COMPANY ET AL.

[No. 6,882. Filed January 12, 1911.]

1. TRIAL.—*Verdict.—Return of.—Judicial Acts.—Record.*—Section 570 Burns 1908, §544 R. S. 1881, providing that the verdict must be in writing, signed by the foreman "and when returned into court the foreman shall deliver" it, imports that the verdict shall be returned by the jury as a body into open court; and the act of the judge in receiving the verdict is a judicial one. p. 699.

2. TRIAL.—*Verdict.—Interrogatories.— Conflict.— How Determined.* —In determining whether there is an irreconcilable conflict between the general verdict and the answers to interrogatories, only the pleadings, verdict and answers will be considered. p. 700.

3. TRIAL.— *Verdict.— Interrogatories.— Return of.— Record.*—The record on appeal should show affirmatively that the verdict and answers to interrogatories to the jury were returned into open court, and not merely that they were filed with the clerk. p. 700.

4. APPEAL.—*Record.—Inferences.*—The court on appeal will indulge inferences to sustain the regularity of the trial court's procedure, but an appellant must affirmatively show harmful rulings in order to overcome the presumption in favor of the decision of the trial court. p. 700.

5. CARRIERS.—*Railroads.—Show Trains.—Contracts.—Negligence.*— Where the owner of a circus, including cars for transportation, hired a railroad company to furnish the motive power and necessary train crew for transportation, further agreeing to save the railroad harmless from any damages caused by negligence in such transportation, and a collision occurs because of such crew's negligence, causing the death of an employe of the circus company, the railroad company is not liable. p. 701.

6. TRIAL.—*Interrogatories.—Issues.*—Interrogatories must call for facts within the issues. p. 703.

7. PLEADING.—*General Denial.—Negligence.*—The answer of general denial in a negligence case puts in issue every fact necessary to sustain the charge of negligence. p. 703.

8. NEGLIGENCE.—*Duty.—Violation of.*—To establish negligence a duty and a violation thereof must be shown. p. 703.

9. NEGLIGENCE.— *Carriers.— Relation.— Interrogatories.*— In an · action by the administratrix of an employe of a circus company against a railroad company for negligence, it is proper to submit an interrogatory asking as to any relationship existing between the railroad company and the decedent. p. 703.

10. CARRIERS.— *Negligence.— General Denial.— Contract of Transportation.—Evidence.*—In an action by the administratrix of a deceased employe of a circus company against a railroad company for negligence in transporting such employe, the contract of transportation between the railroad company and the circus company is admissible in evidence under the general denial to the complaint. p. 703.

11. CARRIERS.— *Private.— Circus Companies.— Contracts.— Public Policy.*—Contracts between circus companies and railroad companies by which the railroad companies transport the circus trains, but without liability for negligence, are not contrary to public policy. p. 704.

From Miami Circuit Court; *Joseph N. Tillett,* Judge.

Action by Rose Kelley, as administratrix of the estate of John F. Kelley, deceased, against the Grand Trunk Western Railway Company and another. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*George W. Galvin, Frank D. Butler* and *William A. Reading,* for appellant.

*Anderson, Parker & Crabill,* for appellee.

MYERS, C. J.—Appellant brought this action against the Grand Trunk Western Railway Company (which we shall hereafter refer to as the company) and Benjamin E. Wallace to recover damages on account of the death of John F. Kelley. The complaint was in one paragraph, answered by separate denials. Appellee Wallace had the verdict of a jury in his favor, and the court rendered judgment on the verdict. The motion of appellee company for judgment in its favor upon the interrogatories and answers of the jury

thereto, notwithstanding the general verdict in favor of the appellant, was sustained, and this ruling is assigned as error.

Appellant makes the point that the record does not show that the interrogatories were submitted to the jury in accordance with the provisions of the act of 1897 (Acts 1897 p. 128, §572 Burns 1908). Appellees insist that the question relied on by appellant is not presented by the record.

The record does not show the submission of the issues to a jury, or that a verdict of a jury was returned into court, or that the interrogatories found in the record were submitted to a jury, or that the interrogatories and answers thereto were returned into court. The record does show that on December 12, 1907, "there was filed with the clerk of the Miami circuit court the verdict of the jury in the above-entitled cause." Then follows a copy of the verdict thus filed. It also appears that on the same day there were filed with the clerk of said court "the following interrogatories, with answers by the jury thereto, in the above-entitled cause." Then follow the title of the cause, and a copy of the interrogatories and answers. It is not disclosed by the record that the complaint or the answers thereto, or that either of the aforesaid proceedings was given a docket number. It does appear that a motion for judgment was filed by said company in cause No. 6,246, Rose Kelley, Administratrix, v. Grand Trunk Western Railway Company et al., which motion, upon a certain day of a certain month of a certain year, and on a certain judicial day of a term of the Miami Circuit Court, was, by the judge of that court, acted upon and sustained. A judgment was duly rendered in favor of appellees and against appellant.

Our statute (§570 Burns 1908, §544 R. S. 1881) provides that the verdict "must be reduced to writing and signed by the foreman; and when returned into court the foreman shall deliver the verdict, and either party may poll the jury." This statute evidently means that the verdict shall be returned by the jury as a body into open

court, and there delivered by the foreman. The doing of these things by the jury must be taken as a part of the judicial proceedings of the particular case. It is not insisted that the clerk of a court is authorized to do any act in this regard in its nature judicial. To take the place of the judge of the court, preside at the return of a verdict, receive it, and discharge the jury are judicial acts. *Willett* v. *Porter* (1873), 42 Ind. 250.

In this case, without any showing that the issues or that the interrogatories were submitted to a jury, copies of what purport to be a verdict of the jury, and the interrogatories and answers thereto, appear in the record as having been filed with the clerk of the Miami circuit court. Who filed them, or what proceedings were had in the cause, after the issues were closed, leading up to the filing with the clerk of such verdict, interrogatories and answers, are not shown. The clerk made up the record as requested by appellant. If we may infer from the fact that the precipe directed the clerk to furnish appellant with a transcript of certain designated proceedings had in a certain cause, wherein a judgment, regular on its face, is here challenged, that the other proceedings found in the transcript had reference to and were a part of the same proceedings, then we would perhaps be authorized to consider the question sought to be raised by the assignment of error, for in determining that

2. question we look only to the complaint, answers, general verdict and answers of the jury to the interrogatories. *City of Jeffersonville* v. *Gray* (1905), 165 Ind. 26. So it seems that the question in this case, arising upon

3. the merits; will be reached only through the channel of inferences, a mode of procedure we are compelled to condemn. It is now an elementary principle of law that inferences may be indulged in support of the rulings, proceedings and judgment of the trial court, but not in

4. favor of one who attacks such action of such court. In this jurisdiction, appellate courts may search the

record to affirm a judgment, but they will not reverse a judgment unless it affirmatively appears from the record that the rulings of the lower court were harmful to appellant. The burden is on the one who alleges harmful error, to present a record clearly excluding the presumption in favor of the proceedings and judgment of the trial court. *Schugart* v. *Miles* (1890), 125 Ind. 445, 450; *Allen* v. *Gavin* (1892), 130 Ind. 190; *Brown* v. *State* (1895), 140 Ind. 374; *Greer-Wilkinson Lumber Co.* v. *Steen* (1906), 37 Ind. App. 595; *Evansville, etc., R. Co.* v. *Lavender* (1893), 7 Ind. App. 655; *Selvage* v. *Green* (1910), 45 Ind. App. 642; Ewbank's Manual §5. While the judgment in this case might, with propriety, be affirmed on the ground of uncertainty appearing upon the face of the record before us, yet we are disposed to decide it upon its merits.

The facts in this case are developed by the answers of the jury to interrogatories. From these answers, in substance, it appears that said Wallace, in the summer of 1903, was the owner of circus property, and engaged in giving circus performances, and as a part of his outfit he owned and used thirty-seven railroad cars to transport his property and employes from place to place over railroads; that on August 6 and 7, 1903, John F. Kelley was in Wallace's employ; that on August 6, 1903, Wallace gave an exhibition at Charlotte, Michigan, which town was on said company's line of railway, and on that evening said property and the employes of said Wallace, including appellant's decedent, were placed in said cars to be transported over said company's railroad to La Peer, Michigan; that said show cars were divided into a train of two sections of eighteen cars each; that decedent was carried in the rear car of the first section; that near Durand, Michigan, the rear section of said train ran into the rear end of the forward section, demolishing the car in which said decedent was riding, and he was thereby killed; that said cars were delivered to said company under and by virtue of a written contract between said

company and said Wallace. In said contract it was stipulated that the contract was not made with the company as carriers, either common or special, and because of the inadequate consideration for any such undertaking Wallace released said company from all liability in respect to said circus and menagerie, and from any loss or damage that might be caused to persons or property to be carried under said agreement, and agreed to indemnify and save harmless said company from all loss or charges, no matter how caused, occurring to or sustained by any person. It was also stipulated that said company was to be held only as hirers of motive power and of men to operate the train, and of the rights to use the roads and tracks of the company to the extent necessary in the premises, and the conductors, engineers and trainmen to be furnished by the company, who were to be deemed the servants of the contractors, and to be operating said motive power, cars or trains under the orders, directions and control of said contractors, subject to certain conditions named, and the rules, regulations and time-table of the company governing the movement of trains; that the company was not to be liable to the contractors, person or persons, whomsoever, using said cars under said contract, for any loss, damage, injury or harm that might happen or be caused to said property or persons. Under this contract the cars in all respects as to running gears, etc., were to be acceptable to the company, and the dimensions not to exceed the standards of the company, and to conform to the requirements of the United States laws as to the height of drawbars, and to be equipped with grab-irons, vertical plane, automatic couplers and air-brakes, and the company had the right to reject for transportation any cars not conforming to said requirements. The cars were to be loaded and unloaded by the contractors, and the trains, if possible, to arrive at the place of exhibition at or before 8 o'clock a. m. on the day of exhibition. The contract contained many other provisions unnecessary here to set forth.

In the complaint the alleged acts of negligence are that on August 7, 1903, said company's servants operated said engines so carelessly and negligently that at or near the town of Durand, Michigan, on the line of said company's railroad, said two sections were negligently and carelessly suffered, permitted and allowed to collide, and to be thrown from the track and overturned, and in such collision, and the wreck incident thereto, said decedent was instantly killed.

Appellant insists that the interrogatory and answer of the jury, showing the contract between the railway company and Wallace, should not be considered, for the reason that it had reference to a fact not within the issues of the case. It is true that interrogatories must relate to questions of fact within the issues. *Illinois Cent. R. Co.* v. *Cheek* (1899), 152 Ind. 663; §572, *supra.* Since this is an action founded upon actionable negligence, the general denial put in issue every essential fact necessary for appellant to establish before she could insist upon a verdict. The burden was on appellant to establish all of the essential elements of actionable negligence, and as "there is no negligence without a violation of some duty, and there can be no violation of duty unless such duty exists" (*Consolidated Stone Co.* v. *Redmon* [1899], 23 Ind. App. 319, 327), it was therefore important to show the relationship between decedent and the company at and prior to the time of the accident, and by proper interrogatories have the jury disclose such relationship. It is alleged in the complaint, and the fact is found by the jury, that appellant's decedent at the time of the accident was in the employ of Wallace, and was riding in one of his show cars then being transported by appellee company over its line of railroad under the terms of a written agreement between said company and Wallace.

This agreement between the company and Wallace was admissible under the general issue as tending to establish the relationship between the parties, and to show

the duty owing by the company to decedent. *Blank* v. *Illinois Cent. R. Co.* (1899), 182 Ill. 332, 336; *Pennsylvania Co.* v. *Dean* (1884), 92 Ind. 459; *Menaugh* v. *Bedford Belt R. Co.* (1901), 157 Ind. 20. The contract in this case appears to be one in general use throughout the country between railroad companies and show companies, where the latter have their own cars in which to transport their property and employes from point to point. The validity of such contracts, exempting the carrier from liability for negligence, and providing that the carrier's obligation should be that of a private carrier only, has been generally upheld as not being contrary to public policy. *Cleveland, etc., R. Co.* v. *Henry* (1908), 170 Ind. 94; *Pittsburgh, etc., R. Co.* v. *Mahoney* (1897), 148 Ind. 196, 40 L. R. A. 101, 62 Am. St. 503; *Russell* v. *Pittsburgh, etc., R. Co.* (1901), 157 Ind. 305, 55 L. R. A. 253, 87 Am. St. 214; *Louisville, etc., R. Co.* v. *Keefer* (1896), 146 Ind. 21, 38 L. R. A. 93, 58 Am. St. 348; *State, ex rel.,* v. *Cadwallader* (1909), 172 Ind. 619, 639; *Wilson* v. *Atlantic, etc., R. Co.* (1904), 129 Fed. 774; *Blank* v. *Illinois Cent. R. Co., supra; Robertson* v. *Old Colony R. Co.* (1892), 156 Mass. 525, 32 Am. St. 482; *Coup* v. *Wabash, etc., R. Co.* (1885), 56 Mich. 111, 22 N. W. 215, 56 Am. Rep. 374; *Chicago, etc., R. Co.* v. *Wallace* (1895), 66 Fed. 506, 14 C. C. A. 257; 1 Hutchinson, Carriers (3d ed.) §88; Moore, Carriers §38. Applying the law as announced in the cases and textbooks last cited to the facts as disclosed by the answers of the jury to the interrogatories in this case, we are compelled to hold that the ruling of which appellant complains was not erroneous.

Judgment affirmed.