THE PENNSYLVANIA RAILROAD COMPANY *v.* KENT.

[No. 19,658. Filed May 21, 1964. Rehearing denied July 9, 1964. Transfer denied December 17, 1964, with opinion reported in 202 N. E. 2d 893.]

*William A. Wick, Carl T. Reis, George C. Forrey III, Edward B. Raub, Jr.,* and *Jacob S. White,* all of Indianapolis, for appellant.

*Hickam and Hickam,* of Spencer, for appellee.

HUNTER, P. J.—This action was brought by the appellee in the court below praying for declaratory judgment construing an indemnifying agreement in a real property lease.

Both the appellee (plaintiff below) and the appellant railroad company (defendant below) filed motions for judgment and decree on the pleadings in the trial court. The court decided the issue for the appellee plaintiff by sustaining his motion and overruling appellant's motion, and entering judgment thereon.

The appellant's assignments of errors are two in number; they are as follows:

(1) The court erred in sustaining appellee's (plaintiff below) motion for judgment and decree on the pleadings.

(2) The court erred in overruling appellant's (defendant below) motion for judgment and decree on the pleadings.

The facts as shown by the complaint and answer, which we deem to be true and correct, inasmuch as both parties moved for judgment on the pleadings in the court below, are as follows:

One Robert Cooksey was an employee of the appellee; the appellee was a lessee of the appellant railroad company and adjacent to the leased property was appellant's railroad track upon which appellant's railroad cars were permitted to stand, including cars for the receipt or shipment of property by the appellee. Cooksey, while at work for the appellee and while standing in one of appellant railroad's gondola type cars, was injured as a result of the appellant's negligence. In his complaint for declaratory judgment the appellee Kent recited the facts relative to injury sustained by Cooksey. Cooksey alleged that the appellant caused four empty cars to be "bumped" against the car in which he was working and that he thereby received injuries through the negligence of the appellant railroad company.

According to the pleadings at bar the appellee's employee Cooksey filed his cause of action against the appellant railroad company in the Cook County, Illinois Circuit Court which case is pending. The appellant tendered the defense of said suit to the appellee and demanded that appellee protect, indemnify, and save the appellant railroad company harmless from all damage and expense incidental to suit pursuant to provisions of a lease contract between the parties. The appellee

denies any liability, under the lease, to defend the suit or to reimburse and save the appellant harmless from any loss, damage or expense resulting from the Cook County Circuit Court case.

The pertinent portions of the trial court's judgment are set forth as follows:

"IT IS THEREFORE CONSIDERED, ORDERED, ADJUDGED AND DECREED by the court that under the contract between the plaintiff Ned B. Kent and the defendant The Pennsylvania Railroad Company . . . that the plaintiff Ned B. Kent is not liable or obligated to the defendant The Pennsylvania Railroad Company to protect, indemnify or save defendant harmless from any loss, damage or expense which defendant may suffer or for which defendant may be held liable as the result of any injuries which may have been sustained by Robert Cooksey as the result of personal injuries which he may have sustained on or about the 13th day of October, 1958, as alleged in the complaint pending on behalf of said Robert Cooksey in the Circuit Court of Cook County in the State of Illinois, . . . that the plaintiff Ned B. Kent is not liable, bound or obligated to the defendant The Pennsylvania Railroad Company under said contract to defend said action against the defendant The Pennsylvania Railroad Company now pending in the Circuit Court of Cook County . . . or any other action which may hereafter be instituted by or on behalf of the said Robert Cooksey or any other person against The Pennsylvania Railroad Company . . . "

The portions of the lease contract between the appellant railroad company and the appellee, Ned B. Kent (d/b/a individually as Kent Soil Service) are as follows:

"It is understood and agreed that Lessor will permit the standing of cars on the track along the northwesterly side of the land covered by this LEASE, for the receipt or shipment of property by

Lessee subject, nevertheless, to the rules and regulations prescribed from time to time in Lessor's filed tariffs; and (as such location is not the usual or normal place for the loading or unloading of freight) further subject, nevertheless, to the following terms and conditions which are assented and agreed to by Lessee:" . . .

(1) . . .

(2) . . .

"(3) Lessee shall protect, indemnify and save harmless lessor from all loss, damage or expense, as well as claims and actions, which Lessor may suffer, or for which it may be held liable, *as a result of any act or omission of Lessee, its officers, employees, or others, upon or about the cars or track in connection with the business or activities of Lessee; and shall especially protect, indemnify and save harmless Lessor from all loss, damage and expense, as well as claims and actions, which Lessor may suffer, or for which it may be held liable, resulting from injury (including death) to Lessee, Lessee's officers, agents and employees, or to other persons who are at the time of the injury upon or about the cars or track in connection with the business or activities of Lessee, arising in any manner or from any cause whatsoever.*" (our emphasis)

The real property leased by the appellant railroad company to the appellee Kent comprised approximately 24,753 square feet which real estate is adjacent to the railroad right of way. The railroad right of way located on the northwesterly side of and opposite the appellee Kent's place of business contained a portion of the main line of the Indianapolis-Vincennes branch of said railway and also team tracks and passing sidings and it was while working in one of the appellant railroad company's cars which was standing on the appellant's switch track adjacent to but not within the boundaries of the leased land, that the appellee's employee Cooksey was injured. For the purposes of the deter-

mination of the issues involved in this case, Cooksey's injuries are admitted to be the result of the sole negligence of the appellant railroad company in the operation of its train. The train was entirely under the control of the railroad company through its employees. Kent had no control over the train, the operation thereof, the tracks, or the cars. Cooksey's injuries were sustained without any fault or negligence of the appellee Kent or his employees.

Thus, we are directed in this appeal to a construction of the provisions of the above set forth lease contract. The sole question presented in the case at bar calls for a consideration of the extent, scope and legal enforceability of the indemnification clause of the real estate contract involved in this appeal.

Therefore, the questions presented by the assignment of error are (1) whether the trial court in the declaratory judgment action was correct in sustaining the appellee's motion for judgment and decree on the pleadings, and (2) whether or not the trial court was correct in overruling appellant's motion for judgment and decree on the pleadings.

The appellant cites the case of *The Consolidated Coal and Lime Company* v. *Mercer* (1896), 16 Ind. App. 504, 510, 44 N. E. 1005 as authority for a strict construction of the language of the contract and that the terms of said contract may not be reduced or lessened. The issue there hinged on an instruction given by the trial court re the question of extraneous facts as applicable to a written contract and laid down the legal principle that the terms of a written contract may not be reduced by extrinsic evidence "unless such reduction shall appear . . . to have been known to it at the time to be essential to the accomplishment of the object for which ap-

pellee made the contract." Therefore, it is not applicable to the issue here where we are concerned with *the language of a lease contract as it pertains to indemnity and liability of the parties in* a tort action. Likewise, inapplicable is the case of *Doxey's Estate* v. *Service* (1902), 30 Ind. App. 174, 65 N. E. 757, for there the issues had to do (1) with the execution of an oil lease wherein the lease did not bear the signatures and acknowledgments of the lessees, and (2) with the proposition that successors in interest by purchase of said leases were held to be merely sureties in action for drilling deferment rentals due under the lease contract.

The appellant cites the case of *Sargeant* v. *Leach* (1911), 47 Ind. App. 318, 321, 94 N. E. 579 in support of its contention that the strict terms of the contract must be applied to the facts in this case. In that case the court laid down the general principle that " . . . a plain, unambiguous contract must be construed by the court according to its express terms." It should be pointed out, however, that the questions raised in that case were relative to the effect of a contract for the payment of royalties for all salable coal under a certain mining lease contract and the questions presented were three in number, they were: (1) was the appellee entitled to show the royalties for sale of coal extracted under said lease contract upon the basis of a stated price per hundred bushels of coal, (2) were the appellants entitled to a reduction for pea and slack coal of the total bushels of coal mined and sold, and (3) did the court err in excluding certain evidence offered by the appellants to show a long established practice and usage as a basis for construction of the contract that had originally been placed upon the lease by the original parties?

It will be readily noted, therefore, that there is no question of indemnity or liability for a tort action involved in the construction of that contract. We are of the opinion that the principle there announced by that decision has no applicability to the issues here presented. As a general principle of law, we cannot find fault with the language therein contained that " . . . a plain, unambiguous contract must be construed by the court according to its express terms." In the instant case we are concerned solely with the question of liability for negligence of the appellant railroad company under an indemnity clause of a real estate contract. It should be emphasized that *the lease contract* in issue here *is not an insurance contract* and *that the printed lease form was furnished by the appellant railroad company*.

The appellant also relies upon the case of *Kelley* v. *Grand Trunk, etc., R. Co.* (1911), 46 Ind. App. 697, 93 N. E. 616 as clearly establishing its contention. That case involved an injury to a circus employee being hauled by the railroad. In that case it is particularly noteworthy that the court held the railroad was serving as a private carrier because by the very terms of the contract between the circus and the railroad it was stipulated in the contract "that the contract was not made with the company as carriers, either common or special," and the contract further provided *"the conductors, engineers and trainmen . . . furnished by the company . . . were to be deemed the servants of the contractors, and to be operating said motive power, cars or trains under the orders, directions and control of said contractors,* (circus)". There the train operating employees in committing acts of negligence were employees of the circus and under its direction, orders

and control. That case is clearly distinguishable from the case at bar for in the instant case *there is no contention except that the injury sustained by Cooksey was the result of the railroad's own negligence created by its own employees, and who at the time and place were solely under the orders, control and directions of said railroad company.*

The appellant cites to us the case of *Cleveland, etc., R. Co.* v. *Henry* (1908), 170 Ind. 94, 83 N. E. 710. This was another circus train case wherein the contract provided "The party of the second part (the circus) shall assume all responsibility for damages to persons or property which are hereby transported at *its sole risk,* and it further agrees *to indemnify and hold* said railroad company *harmless on account of any claim for personal injuries or damage to property."* (our emphasis). The suit was against the railroad company for death of a circus employee. The court there held that the railroad was serving as a *private carrier* and in such a case the railroad company as a *private carrier was not liable as a common carrier* and could not under the terms of the contract, be proceeded against as such. There, the court said that the railroad was *under no legal duty to haul show cars* that were owned and fitted up by show men and used exclusively by them to house and transport their employees and show property as a company outfit from place to place over railroads. It further held that the contract between the railroad company and the circus was in essence a contract to provide only *motive power* in moving the circus's property and employees from one city to another, as it also held in the Kelley case, *supra,* cited immediately above, and the railroad was therefore acting in the capacity of a *private carrier only.*

Therefore, we believe the rule to be well established, not only in this jurisdiction but in a majority of the jurisdictions in this country, that a railroad company when called upon to perform a service which it is not compelled to perform by the very nature of its operation as a common carrier, may, under proper conditions, contract against its liability for negligence for the reason that it is then acting in the capacity of a private carrier. *Russell* v. *Pittsburgh, etc., R. Co.* (1901), 157 Ind. 305, 61 N. E. 678; *Pittsburgh, etc., Railway Company* v. *Mahoney, Administrator* (1897), 148 Ind. 196, 46 N. E. 917; *Cleveland, etc., R. Co.* v. *Henry, supra; The Louisville, New Albany and Chicago Railway Company* v. *Faylor* (1890), 126 Ind. 126, 25 N. E. 869; *Kelley* v. *Grand Trunk, etc., R. Co., supra; Louisville, New Albany and Chicago Railway Co.* v. *Keefer* (1896), 146 Ind. 21, 44 N. E. 796; *Vandalia R. Co.* v. *Stevens* (1917), 67 Ind. App. 238, 114 N. E. 1001. Further, we believe the rule to be well established that a railway company acting as a *common carrier* may not contract for indemnity against its own tort liability when it is performing either a public or quasi public duty such as that owing to a shipper, passenger, or servant, and *that such contracts are void as* against public policy. *Vandalia R. Co.* v. *Stevens, supra; Graham & Co.* v. *Davis & Co.* (1854), 4 Ohio St. 362, 62 Am. Dec. 285; *The Michigan Southern and Northern Indiana Railroad Company* v. *Heaton* (1871), 37 Ind. 448, 10 Am. Rep. 89; *Adams Express Company* v. *Fendrick* (1871), 38 Ind. 150; *The Terre Haute and Logansport Railroad Company* v. *Sherwood et al.* (1892), 132 Ind. 129, 31 N. E. 781, 17 L. R. A. 339, 32 Am. St. 239; *The Indianapolis, Decatur and Western Railway Company* v. *Forsythe* (1892), 4 Ind. App. 326, 29 N. E. 1138; *Reid* v. *Evansville and Terre Haute*

*Railroad Company* (1893), 10 Ind. App. 385, 35 N. E. 703, 53 Am. St. 391.

Our Supreme Court, from time to time in the above cited cases, has made the distinction between a common carrier and that of a private carrier, and in instances where the railroad contracted to haul circus or show trains, pullman cars, and railway express cars, it has held such railroads under the particular circumstances to be serving in the capacity of private carriers. Further, in Massachusetts where a railroad company and a news distributing company entered into a contract providing for the sale of newspapers, magazines, etc. by newsboys riding on passenger trains en route between regular station stops on said railroad lines, the court held such a contract providing for indemnity for injuries sustained by said newsboy to be valid for the reason that the railroad was serving in the capacity of a private carrier. *Bay State St. Ry. Co.* v. *North Shore News Co.* (1916), 224 Mass. 323, 112 N. E. 1007.

It appears significant that the appellant in the instant case has stated that the railroad was acting in its private capacity in executing the lease here involved, and in support thereof places reliance upon the case of *Niederhaus* v. *Jackson, Receiver* (1922), 79 Ind. App. 551, 137 N. E. 623. Appellant does not proffer in its brief that merely by the execution of the herein real estate lease it did in fact become a private carrier, and doubtless such contention could not be upheld as a matter of law. In the Niederhaus case there was property damage by fire communicated by a locomotive; the action involved a clause in a lease between the parties whereby the lessee released the railroad lessor from all responsibility for or on account of any cause of action that might arise by reason of damage by fire to build-

ings erected by the lessee upon the land leased by the railroad to the appellant. Therein the court stated that "The principal consideration expressed therein was the stipulation for exempting appellee from liability for damages occasioned by fire and *in this stipulation the public had no interest;* that such provision in a lease between a railroad company and another is a valid provision that has been many times decided". (our emphasis) The court in the Niederhaus case cited many cases from other jurisdictions upholding the validity of fire exemption clauses in railroad real estate lease contracts. However, it must be observed that the holding in that case and in many other similar holdings under like or similar circumstances in other jurisdictions are to be regarded as limited to the factual circumstance therein considered, viz: damage to the lessee's property occasioned by fire set by sparks from the locomotive and, therefore, such cases are controlling only to the extent that they were adaptable to the times, hazards, uses and risks incidental to the operation of railroads during the era of steam operated locomotives. It results after careful research that substantially all of the decisions upholding indemnifying agreements in favor of railroads involved contracts which undertook to indemnify specifically against fire or other loss to property of the parties thereto, except in those cases where the railroad was found to be operating as a private carrier. It appears that in the Niederhaus case the court, in upholding a fire indemnifying agreement, employed language in its decision which may be viewed as failing to make a real distinction between a railroad's operation as a common carrier and its operation as a private carrier and implying that, in instances where the railroad was acting in its private capacity in its contracting agreements, it thereby transformed itself into that of

a private carrier by the mere language of its agreement. And, indeed, in contending that the appellant, in this case, was acting in its private capacity, the appellant seems to have adopted such an interpretation of the portent of the Niederhaus case. We are not persuaded, however, that the appellant railroad company in the instant case, by the simple device of the execution of a real estate contract, could change the character of its operation from that of a common carrier to that of a private carrier. Therefore, in our opinion, it does not necessarily follow, as a matter of law, that in so doing the appellant changed the character of its operation to that of a private carrier.

The case at bar is clearly distinguishable from the Niederhaus case for the reason that the injury here was sustained by a third party, an employee of the appellee Kent, who was in no way a party to the contract and, further, such injury was sustained on railroad property which was not a part of the leasehold and was occasioned solely by the negligence of the railroad.

It is noted that in the *Niederhaus* v. *Jackson* case, *supra*, at p. 555, the court made this pertinent statement:

. . . "But while such companies may not, as common carriers, enter into contracts concerning duties which they owe to the general public, they may, as private carriers or bailees for hire, enter into special engagements as matters of accommodation concerning matters in which the public has no interest, but *which concern only the contracting parties.*" (our emphasis)

The character of the business of common carriage by rail embraces the carriage of property generally, and contemplates that such property will be carried on trains made up by the carrier entirely under its super-

vision and control and subject to the control and ordinary regulations governing such transportation. In the instant case, the railroad line over which the appellant railroad company's train was being operated at the time in question was the appellant's own line of road. In addition to other uses, it was used by the appellant railroad company in connection with its business as a common carrier for the transportation of the products of the appellee Kent's soil service business. The appellant was furnishing cars for the receipt and shipment of the products of the appellee and was engaged in such transportation. As a common carrier engaged in hauling and transporting said products over its own road and upon its own right of way, the appellant necessarily was interested in the continuing operation of the appellee Kent's soil service business, and hence was interested in the transportation of products to and from said place of business. Thus, in the instant case, appellant railroad company, in the conduct of its business as a common carrier, had complete, undivided, and unrestricted management, control and direction of every element that entered into its operation with respect to the transportation and moving of the products of the appellee, including the road right of way, its own cars, locomotives and all employees connected with the operation of such train. Hence, it was responsible for and had the power to control and guard against every element of negligence which might expose the employee, Cooksey, to dangers that might have been avoided by the exercise of that due care which the law imposes on common carriers.

For this court, therefore, under such circumstances, to permit such a carrier to avoid its obligation and duty to exercise due care on the ground that in the particular instance it allegedly contracted as a

private party or private carrier would be, under the circumstances in this case, in our judgement, the equivalent of lending our sanction and approval to evasion of its legal responsibilities and would amount to complete acquittance of the appellant's liability for its own torts.

The Appellate Court, in the case of *Vandalia R. Co.* v. *Stevens, supra,* after reviewing our Supreme Court decisions and many decisions from other jurisdictions, in a well reasoned opinion, stated:

" . . . that the great weight of authority in this country, Indiana included, is to the effect that, whatever doubt may have once been entertained on the subject, it is now well settled that, although a common carrier cannot limit the liability which the common law devolves on him, by any general notice, he, by special contract with the shipper, may limit his *liability as an insurer,* and thereby exonerate himself from responsibility for losses arising from causes over which he has no control, *but in so far as his special contract attempts to exonerate him from any loss to which his own fault or negligence has contributed, it will be treated as against public policy and void. Graham & Co.* v. *Davis & Co., supra; Michigan, etc., R. Co.* v. *Heaton* (1871), 37 Ind. 448, 10 Am. Rep. 89; *Adams Express Co.* v. *Fendrick* (1871), 38 Ind. 150; *Terre Haute, etc., R. Co.* v. *Sherwood* (1892), 132 Ind. 129, 31 N. E. 781, 17 L. R. A. 339, 32 Am. St. 239; *Indianapolis, etc., R. Co.* v. *Forsythe* (1892), 4 Ind. App. 326, 29 N. E. 1138; *Reid* v. *Evansville, etc., R. Co.* (1894), 10 Ind. App. 385, 35 N. E. 703, 53 Am. St. 391.

As before indicated, the liability upon which appellee's action is predicated is alleged to have resulted from appellant's negligence. *The action sounds in tort* and *not in contract. The liability of an insurer is not involved.* It follows that the contracts upon which said answers are based constitute no defense to appellee's cause of action, *if, in fact, the appellant sustained toward the appellee,*

*at the time of his injury, the relation of a common carrier, rather than that of a private carrier."* (our emphasis)

A careful reading and analysis of the *Niederhaus* v. *Jackson* case, *supra,* fails to lend conviction to the tendered proposal that it was therein held that a railroad company, by means of a written contract of lease of its real estate or property to another, can absolve itself from liability for its torts by the inclusion therein, as a part or the whole of the consideration thereof, of a clause requiring the lessee to indemnify or save it harmless from the legal consequences of its tort. If to some the doctrine of that case is capable of a construction such as stated in the said proposal, then we could do no other than disapprove the same. *It is understood, of course, that we do not now speak of or have reference to the right of a lessee to release the railroad company, as lessor, from claim for damages to the person or property of the lessee.*

The facts in the cases herein cited involve almost exclusively cases of (1) damage by fire or other causes to the lessee's property, and (2) injuries to third persons, as riding passengers, who were in transit on a private carrier. In the instant case the injured person was an employee of Kent Soil Service (the lessee). He was not a party to the involved contract and was not in transit on a private carrier. We are of the opinion, however, that the rule here considered is potentially of far-reaching effect and, consequently, it must be considered and applied upon the base of its broadest aspect and not be limited or restricted by the mere circumstance of the injured parties' relationships to, or status with, the appellee as his employee and when the contractual relationships of the parties hereto ascend into the realm of public interest, the interpretation of

the extent and effect of the lease agreement here considered must be approached and interpreted upon the broad base of public policy. That the parties may enter into such contractual arrangement as they may desire may be conceded in the general sense; when, however, such special agreement may result in affecting the public interest and thereby contravene public policy, the abrogation of the rules governing common carriers must be zealously guarded against.

We are of the opinion, therefore, that upon the record the appellant railroad company in this case was operating as a common carrier and, admittedly, during such operation negligently injured the employee Cooksey and, therefore, it could not under such circumstances contract for indemnity against liability for its own negligence.

Finding no reversible error, the trial court's judgment is affirmed.

Carson, C. J., Cooper, Faulconer, Kelley, Mote, and Pfaff, JJ., concur.

Ryan, J., not participating.

NOTE.—Reported in 198 N. E. 2d 615. Transfer denied 202 N. E. 2d 893.