PENN CENTRAL CO. *v.* YOUNGSTOWN SHEET & TUBE CO.

[No. 769A132. Filed December 29, 1969. Rehearing denied January 16, 1970. Transfer denied April 24, 1970.]

*J. A. Bruggeman, Robert Thompson, Barrett, Barrett & McNagny,* of counsel, all of Fort Wayne, for appellant.

*John P. McQuillan, William S. Spangler, Spangler, Jennings, Spangler & Dougherty,* of counsel, all of Gary, for appellee.

SHARP, J.—On April 29, 1958, Pennsylvania Railroad Company entered into an agreement with Appellee, Youngstown Sheet & Tube Company, with reference to the use of Appellant's tracks and property at and near Appellee's plant site in East Chicago, Indiana. The critical provision of this agreement here in issue is paragraph 8 which reads:

> "Youngstown agrees to assume all liability for loss and damage to all property and injury to or death of all persons resulting from its use of said tracks and appurtenances herein covered, unless due solely to fault or negligence of Pennsylvania, its employees, agents, or other lessees. Track failures shall not be considered as Pennsylvania's fault or neglect, unless loss and damage is due to failure of Pennsylvania to repair track within thirty (30) days after receipt of written notice from Industry that track is unsafe for the operation thereon of its cars and locomotives."

On July 26, 1968, Plaintiff-Appellant filed its complaint for declaratory judgment with reference to said agreement. Plaintiff's complaint alleges that one Kenneth Earl has filed a complaint for personal injury damages on May 8, 1967. Plaintiff's complaint further alleges:

> "Said collision was not due solely to fault or negligence of Pennsylvania, its employees, agents or other lessees and was not due to failure of Pennsylvania to repair track within thirty (30) days after receipt of written notice from Industry that track is unsafe for the operation thereon of its cars and locomotives.

> Plaintiff has requested the Defendant to live up to its obligations under said agreement and to accept the defense of said action on its behalf, to pay any judgment which may be rendered against it in said action and to reimburse it for all expenses incurred or to be incurred, in connection with the defense of said action, but the Defendant has refused to so agree."

The complaint of said Kenneth Earl designates Youngstown Sheet & Tube Company, Indiana Harbor Belt Railroad Company, and Pennsylvania Railroad Company as Defendants, and essentially alleges:

"1. That at all times hereinafter mentioned, the plaintiff, Kenneth Earl, was the operator of a certain 1960 Chevrolet sedan.

2. That at all times hereinafter mentioned, the defendant, Youngstown Sheet & Tube Company, was the owner of a certain deisel engine #900.

3. That at all times hereinafter mentioned, the defendant, Indiana Harbor Belt Railroad Company, was the owner and operator of a certain railroad track hereinafter described more fully.

4. That at all times hereinafter mentioned, the defendant, Pennsylvania Railroad Company, was the owner and operator of a certain railroad track hereinafter described more fully.

5. That at all times hereinafter mentioned, the said deisel engine owned by the defendant, Youngstown Sheet & Tube Company, was operated by the agent and servant of said defendant, Tom Jalovocky, while acting within the scope of his employment with said defendant.

6. That at all times hereinafter mentioned, there runs through the City of East Chicago, Lake County, Indiana, a certain public road more commonly known as Riley Road. That the said Riley Road is a two-lane street proceeding in a general southwesterly-northeasterly direction with one lane for southwestbound traffic and one lane for northeastbound traffic. That the said Riley Road is paved with a hard substance more commonly known as blacktop.

7. That intersecting the said Riley Road is a certain railroad track owned, operated and controlled by the defendants, Indiana Harbor Belt Railroad Company and Pennsylvania Railroad Company. That the said railroad track proceeds in a general southeasterly direction.

8. That on or about August 21, 1965, at approximately 1:20 A.M., the defendant, Youngstown Sheet & Tube Company, by and through its agent Tom Jalovocky, was operating the said deisel engine and train, proceeding in a southeasterly direction on the track owned and operated by the defendants, Indiana Harbor Belt Railroad Company and Pennsylvania Railroad Company. That the defendant stopped its train in the crossing of the said railroad track and Riley Road, thereby blocking said crossing.

9. That at approximately the same time and place, the plaintiff, Kenneth Earl, was driving his said vehicle in a

southwesterly direction on the said Riley Road, towards the said intersection of the railroad track and Riley Road. That the defendants failed to put out proper signal or warning lights that such intersection was blocked by the said stopped engine and train, and the plaintiff then and there drove into and against the said train as it obstructed passage on Riley Road, thereby causing the plaintiff to be thrown about and against various parts of his vehicle and inflicting severe injury on the person of the plaintiff.

10. That the defendant, Youngstown Sheet & Tube Company, by or through its agent, Tom Jalovocky, did one or more of the following acts of negligence, which was a proximate cause of the injuries sustained by the plaintiff herein:

(a) That the defendant carelessly and negligently blocked the said intersection of Riley Road and the railroad track owned by Indiana Harbor Belt Railroad Company and Pennsylvania Railroad Company;

(b) That the defendant carelessly and negligently failed to provide adequate visible signal, by flashing lights or otherwise, that such tract was occupied by a train;

(c) That the defendant carelessly and negligently failed to give proper audible signal, by horn, bell, whistle or otherwise, that a train was occupying the said railroad track;

(d) That the defendant carelessly and negligently failed to have proper lights on the train.

11. That the defendants, Indiana Harbor Belt Railroad Company and Pennsylvania Railroad Company, and each of them, did one or more of the following acts of negligence, which was a proximate cause of the injuries sustained by the plaintiff herein;

(a) That the defendants carelessly and negligently maintained a railroad crossing and failed to provide proper lighting at such crossing;

(b) That the defendants carelessly and negligently failed to provide any proper signal at or near said crossing as to such track being occupied by a train.''

The Defendant-Appellee filed its answer in general denial under Rule 1-3 and filed a third paragraph of answer to Plaintiff's complaint which stated:

"Comes now defendant, and for a third paragraph of answer to plaintiff's complaint, says as follows:

That the alleged agreement quoted in rhetorical paragraph three of the plaintiff's complaint and attached to plaintiff's complaint as Exhibit A, which alleged indemnity agreement purports to relieve the plaintiff from its joint negligence, is unenforcable and void under the laws of this state, and that further the portion of the said alleged agreement quoted in rhetorical paragraph three of the plaintiff's complaint is illegal and against the public policy of this state, as applied to the claim and cause of action asserted by Kenneth Earl, which complaint is set forth and incorporated in plaintiff's complaint as Exhibit B."

The Plaintiff-Appellant filed a demurrer to Defendant-Appellee's third paragraph of answer on the ground that it did not state facts sufficient to constitute a defense to said complaint. The trial court overruled this demurrer; Plaintiff-Appellant refused to plead further and this appeal resulted.

The only question before this court is the validity of said paragraph 8 of this agreement in this set of circumstances. The contract had been in force between the parties for nearly ten years before Earl's accident. Several times Youngstown had assumed liability for injuries to employees caused by the joint negligence of the parties. Appellee does not deny the efficacy of the contract in such circumstances. However, Appellee argues, and the trial court so found, that the clause was void as against public policy in this frame of reference because the Appellant, Penn Central, a common carrier, may not contract away liability for a non-delegable duty owed to the public.

The Appellant here stands in a peculiar position as a lessor of real estate, but with duties surrounding that real estate, such as protecting crossings, which may not be delegated due to the public interest in the vigilant fulfillment of the duties. In cases of this nature, construing indemnity clauses, the distinction between a private lessor or private carrier and a common carrier has been heavily relied upon to conclude whether or not there was a duty to the public for which the railroad could not contract against its own negligence or torts. It is well established that the mere

signing of a lease, or the intention of the two contracting parties, does not automatically move the common carrier into the realm of a private lessor. The *Pennsylvania Railroad Co. v. Kent,* 136 Ind. App. 551, 198 N. E. 2d 615; transfer denied with opinion 246 Ind. 101, 202 N. E. 2d 893 (1964), and cases cited therein. However, it is clear that Appellant here does not fit neatly into the category of a common carrier as defined and used in the *Kent* case:

> "The character of the business of common carriage by rail embraces the carriage of property generally, and contemplates that such property will be carried on trains made up by the carrier entirely under its supervision and control and subject to the control and ordinary regulations governing such transportation. ******* Thus, in the instant case, appellant railroad company, in the conduct of its business as a common carrier, had complete, undivided, and unrestricted management, control and direction of every element that entered into its operation with respect to the transportation and moving of the products of the appellee, including the road right of way, its own cars, locomotives and all employees connected with the operation of such train. Hence, it was responsible for and had the power to control and guard against every element of negligence which might expose the employee, Cooksey, to dangers that might have been avoided by the exercise of that due care which the law imposes on common carriers." 136 Ind. App. at 653, 654.

However, neither is the Appellant a strictly private lessor of real estate under the *Kent* case and its predecessors because the duty of the Penn Central to use due care to protect motorists at crossings may not be delegated to anyone. Rather than attempt further nonclassification of the Appellant's position, we turn to an examination of the underlying reason for the private-common carrier classes, that of the effect of this clause on the public's interest in it under these circumstances.

The contract may be viewed from two levels. Is Kenneth Earl's right to recover damages from this accident in any way impaired by the agreement between Penn Central and Youngstown? Earl may sue both parties here, and get a judg-

ment against either or both. Any judgment in his favor against either party will be enforceable against that party, and in the event of a joint judgment, against either. Earl is not a party to this contract, and need not be bothered with its application. The second, larger level is that of the effect of this contract upon the protection of the general public at railroad crossings. Will Penn Central be induced to ignore the safety responsibilities it alone bears because it will not be financially responsible for the results if the following contingencies occur: (1) That the negligence of Penn Central is not the sole legal cause of an accident (see *New York Central Railroad Company* v. *Northern Indiana Public Service Company*, 140 Ind. App. 79, 95, 221 N. E. 2d 442, 451 (1966)), and (2) That a train made up, run and controlled by Youngstown legally contributes to the cause of the mishap? We do not think so. We view this contract as an indemnity contract which any lessor has the right to demand from a lessee of property, similar to that contract construed in the *New York Central Railroad Company* case cited above. This is from the partial private lessor of real estate aspect of Appellant's contract with Appellee. The public policy question involved in this exact situation we feel has been anticipated by our Supreme Court in its opinion denying transfer in *Kent, supra:*

> "The opinion of the Appellate Court should be construed as denying the right of a common carrier to make indemnifying contracts against its own torts or negligence in its common carrying services only with those using such services, and it further should not be construed as prohibiting a common carrier from entering into insurance contracts with duly licensed insurance companies to indemnify it against losses." 246 Ind. at 102.

An indemnity agreement such as is before this court will not lead Penn Central to abandon its duties any more than negligent driving is induced from insured motorists. It should be again noted that the contract in question only relieves Appellant Penn Central from its financial responsibilities if it is not the sole cause of the accident. The

lessee Youngstown also must be negligent, and as a lessor, Penn Central may rightfully demand that the lessee bear the entire burden of that to which it contributes as part of the consideration for the lease.

The third paragraph of Defendant-Appellee's answer was not sufficient to withstand a demurrer.

The trial court was in error in overruling the demurrer and this ruling must be reversed and this case remanded with instructions to sustain said demurrer.

Reversed and remanded. Costs v. Appellees.

Pfaff, C.J., and Hoffman, J., concur. White, J., concurs in result.

NOTE.—Reported in 253 N. E. 2d 704.