**In the Matter of PENN–DIXIE INDUSTRIES, INC., Debtor.**

**In the Matter of PENN–DIXIE STEEL CORPORATION, Debtor.**

**Bankruptcy Nos. 80 B 10472, 80 B 10473.**

United States Bankruptcy Court, S. D. New York.

Aug. 19, 1982.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for debtors; Wendy Snyder, New York City, of counsel.

Slavitt, Connery & Vardamis, Norwalk, Conn., for John O'Connor; Ellery E. Plotkin and Harry Lessin, Norwalk, Conn., of counsel.

## DECISION AFTER HEARING ON DEBTOR'S OBJECTION TO CLAIM FILED BY JOHN J. O'CONNOR

BURTON R. LIFLAND, Bankruptcy Judge.

This matter is before the Court on an objection filed by Penn-Dixie Industries, Inc. (the "debtor"), a Chapter 11 debtor, to certain claims filed by John J. O'Connor ("O'Connor") pursuant to sections 502(a) and (b)(1) of the Bankruptcy Reform Act (the "Code"), 11 U.S.C. §§ 502(a), (b)(1) (Supp. IV 1980), and Bankruptcy Rules

306(b) and (c) of the Rules of Bankruptcy Procedure.[1] O'Connor filed three proofs of claim against the debtor pursuant to section 501(a) of the Code, no. 485 ($18,750), no. 512 (no amount) and no. 655 ($43,250), the last of which is designated as a general unsecured claim which amends the two prior claims. The debtor seeks an order striking all of these claims insofar as they assert an amount in excess of the sum it concedes to have been indebted to O'Connor, $18,750.[2]

## THE FACTS

Penn-Dixie Steel Corp., a subsidiary of Penn-Dixie Industries, Inc., employed O'Connor as vice president of finance from April 1977 to July 1978. *See* transcript of April 1, 1982 at 8, 16. This employment was the subject of an "Employment Agreement" between Penn-Dixie Steel Corp. and O'Connor whereby the latter was to receive an annual salary of $50,000.

Section Two of this agreement provides: *Term of Employment.* Subject to the provisions for termination as hereinafter provided in [Section] ... Six (6), this employment agreement is terminable by either the Employer or Employee at any time.

Section Six adds:
*Terminal Benefits.* In the event that the employment of Employee shall be terminated by Employer by virtue of [Section] Two (2) ..., Employer shall pay Employee, as additional compensation and severance pay, the amount of $50,000.

O'Connor testified that despite the specific $50,000 severance pay amount in Section Six, in pre-employment negotiations approximately eight days before the agreement was executed, severance pay was to

be fixed as one year's salary. The agreement was executed in the form set forth above.

In July 1978, O'Connor was transferred to the debtor corporation, Penn-Dixie Industries, Inc., the parent of Penn-Dixie Steel Corp. Concomitantly, O'Connor's salary was raised to an annual base of $75,000, although the debtor and O'Connor never entered into any written agreement regarding this latter salary. *See* transcript of April 1, 1982 at 16. The debtor terminated O'Connor's employment on November 30, 1979 pursuant to Section Two of the Employment Agreement, at which time a discussion took place regarding severance pay. *Id.* at 17. O'Connor admits that he mentioned nothing to William Scharffenberger, the debtor's officer who terminated him, regarding the term during which severance payments would be made. However, O'Connor testified that during this conversation he "noted that the agreement called for one year's severance [pay]." *Id.* at 24. He did not testify as to acquiescence or agreement by Scharffenberger to these terms.

Over the five months following his termination, O'Connor received from the debtor bi-monthly severance payments in the gross amount of $31,250. O'Connor claims that it was the intention of the parties that he was to receive severance pay in the sum of one year's salary. He supports this contention by noting that the severance payments he received would have totaled $75,000, his annual salary, had they continued for a full twelve months following his termination. Significantly, O'Connor admits he never discussed the term or timing of the severance compensation. Scharffenberger flatly denies promising O'Connor any severance pay

---

1. Bankruptcy Rule 306 was prescribed by order of the United States Supreme Court dated April 24, 1973 pursuant to 28 U.S.C. § 2075, 411 U.S. 991, 1046 for use under the former Bankruptcy Act of 1898, as amended, and applicable under the Bankruptcy Code to the extent not inconsistent. *See* B.R.A. Sections 247, 402 and 405.

2. All parties concede that O'Connor has been paid $31,250. *O'Connor claims that he is owed* an additional $43,250 for a total of $75,000. The debtor concedes that it owes O'Connor an additional $18,750, for a total debt of $50,000, but denies it owes O'Connor the additional $25,000.

over and above the $50,000 provided for by Section Six of the Employment Agreement. *See* transcript of May 4, 1982 at 4.[3]

## DISCUSSION

Before reaching the merits of these arguments, it should be noted that Section Eight of the Employment Agreement provides as follows:

> *Governing Law.* This agreement shall be governed in accordance with the laws of the State of Indiana.

 The courts of New York have given effect to a contractual choice of law clause calling for governance by the laws of a particular state unless application of that law would be an affront to the law or public policy of some state with more significant contact with the matter in dispute. *See Guaranty Mortgage Co. v. Z.I.D. Associates, Inc.*, 506 F.Supp. 101, 108 (S.D.N.Y. 1980); *Reger v. National Association of Bedding Manufacturers Group Insurance Trust Fund*, 83 Misc.2d 527, 541, 372 N.Y. S.2d 97, 115–16 (Sup.Ct. Westchester County 1975); Restatement (Second) of Conflict of Laws § 187(2) (1971). *See also Haag v. Barnes*, 9 N.Y.2d 554, 175 N.E.2d 441, 216 N.Y.S.2d 65 (1961) (upholding choice of law provision of State with most significant contacts with matter in dispute). Since the Employment Agreement in dispute was executed in Indiana and was to be performed in Indiana where corporate headquarters were located, there can be no dispute that there is no other state with more significant contact with this agreement than the State of Indiana. The court will therefore look to principles of Indiana law in construing the disputed severance pay provision of the Employment Agreement.

We turn first to the parol evidence rule to determine whether the conversations extraneous to the Employment Agreement should be considered by the court. Specifically, we look to the effect of the parol evidence rule on the conversation regarding severance pay which took place approxi-

mately eight days before the execution of the agreement.

 Courts in Indiana have collectively defined the parol evidence rule as operating to exclude all extrinsic evidence of prior and contemporaneous declarations or transactions which vary, add to, explain or contradict the terms of a written instrument otherwise susceptible of a clear and unambiguous construction. *See Seastrom, Inc. v. Amick Construction Co.*, 161 Ind.App. 309, 311–12, 315 N.E.2d 431, 433 (1974); *American United Life Insurance Co. v. Peffley*, 158 Ind.App. 29, 39, 301 N.E.2d 651, 657 (1973); *Hauck v. Second National Bank*, 153 Ind.App. 245, 260–61, 286 N.E.2d 852, 861 (1972). Even if there is no objection to parol evidence by the litigants, the court should nevertheless exclude parol evidence from its consideration since this rule is not a rule of evidence, but rather a rule of substantive law. *Seastrom, Inc. v. Amick Construction Co.*, 161 Ind.App. at 312, 315 N.E.2d at 433; S. Williston, 4 A Treatise on the Law of Contracts § 631 at 961, 955–63 (W. Jaeger 3d ed. 1961). The rule becomes operative when the parties have embodied their complete and final understanding in written form. S. Williston, *supra* at 960–61.

Before this Court is an agreement which states that "[i]n the event Employee shall be terminated by Employer . . . , Employer shall pay Employee, as additional compensation and severance pay, the amount of $50,000." It is difficult to conceive of a more plain or unambiguous expression of an intent to give O'Connor severance pay of $50,000. Moreover, the completeness and finality of this agreement is expressly stipulated by Section Ten of the Employment Agreement which provides:

> *Entire Agreement.* This Agreement constitutes and embodies the full and complete understanding and agreement of the parties with respect to Employee's employment with Employer, supersedes all prior understandings and agreements,

---

**3.** Although the debtor, a corporate entity separate and distinct from its subsidiary, Penn-Dixie Steel Corp., was not privy to the Employ-

ment Agreement, it has apparently adopted its subsidiary's agreement and admits a severance pay obligation.

if any, whether oral or written between us, and cannot be changed or amended except by the written agreement of both Employee and Employer.

■ Although O'Connor agreed to this so-called integration clause, which clause is conspicuously noted directly above his signature, O'Connor now contends that the intention of the parties was not to limit his severance pay to $50,000, but rather to furnish him with severance pay equivalent to his annual salary at the time he was terminated. Barring some exception to the parol evidence rule, *e.g.* fraud, mistake, undue influence, etc., none of which has been asserted herein, we are compelled to exclude this contradictory evidence in construing the Employment Agreement. Indeed, O'Connor conceded at the April 1, 1982 hearing on this objection that the contract contains no provision relating the amount of severance to the equivalent of a year's salary nor any reference to the manner by which severance would be paid. *See* transcript of April 1, 1982 at 25.

■ Even if we were to consider the conversation which took place approximately eight days prior to the execution of the agreement, during which O'Connor claims to have negotiated for severance pay of one year's salary, it would still be impossible to reach any result other than to find that O'Connor was to receive $50,000 as expressly stated in Section Four of the Employment Agreement. "[T]he object to be attained in interpreting a contract is to ascertain the meaning and intent of the parties *as expressed in the language used.*" *Miller v. Frankfort Bottle Gas, Inc.,* 136 Ind.App. 456, 460, 202 N.E.2d 395, 398 (1964) (emphasis added). *See also Pennsylvania Railroad Co. v. Kent,* 136 Ind.App. 551, 558, 198 N.E.2d 615, 618 (1964). Where the language of a contract is plain and unambiguous, it is without the scope of the judiciary to look outside the contract to ascertain the intent of the parties. *Jenkins v. King,* 224 Ind. 164, 65 N.E.2d 121 (1946).

*See also Unishops, Inc. v. May's Family Centers, Inc.,* 399 N.E.2d 760 (Ind.App. 1980).

■ The above-cited authority makes clear that it is beyond the jurisdiction of this Court to rewrite this Employment Agreement, which clearly and specifically states that O'Connor was to receive $50,000 as severance pay, to provide him instead with one year's salary as severance compensation. *See also National Steel Corp. v. L. G. Wasson Coal Mining Corp.,* 338 F.2d 565, 568 (7th Cir. 1964). Section Six of the Employment Agreement flatly fixes a dollar amount as severance pay. There is absolutely no reference to O'Connor's salary in this clause and the only possible connection between the severance pay term and O'Connor's salary is the coincidence that his salary also was fixed at $50,000 at the time of the agreement of the parties. No modifier keyed to salary adjustment is set forth. The similarity of amounts standing alone does not affect the basis upon which severance pay is to be computed.

Finally, O'Connor alleges that events subsequent to the execution of the Employment Agreement evidence a modification of its severance pay provision.[4] To particularize, O'Connor has presented two separate forms of evidence which he claims support a finding that the Employment Agreement was modified to increase O'Connor's severance pay by $25,000. First, he recalls noting to Scharffenberger at the time he was terminated that he was to receive "one year's severance [pay]". *See* Transcript of April 1, 1982 at 24. Second, O'Connor directs the Court's attention to the five months of severance payments made to him which could be prorated to an annual compensation of $75,000. *See* Brief in Opposition submitted by O'Connor at 3.

■ Although Section Ten of the Employment Agreement stated that "[t]his agreement ... cannot be changed or amended except by the written agreement

---

4. These post-execution events are unaffected by the parol evidence rule which only precludes consideration of negotiations and agreements made prior to or contemporaneous with the integrated writing. *See* S. Williston, *supra* ¶ 632 at 978.

of both Employee and Employer," such a clause does not *ipso facto* preclude a subsequent parol modification. *See Foltz v. Evans*, 113 Ind.App. 596, 49 N.E.2d 358 (1943); *Toledo S. L. & K. C. R. Co. v. Levy*, 127 Ind. 168, 26 N.E. 773 (1891). Furthermore, it is not essential that an oral modification be proved explicitly since modification can be inferred from the actions of the parties. *Connersville Country Club v. F. N. Benzendahl, Inc.*, 140 Ind.App. 215, 222 N.E.2d 417 (1966).

However, in the instant case, there has been no evidence submitted that demonstrates an acceptance by Scharffenberger of the oral modification proposed by O'Connor to allow one-year's salary as severance pay. The unilateral nature of the discussion described by O'Connor precludes an inference of the formation of a modified contract.

Moreover, that O'Connor was paid for five months at an annual rate of $75,000 is by no means dispositive. The record is devoid of any evidence that severance payments were to be made over a twelve month period.

## CONCLUSION

We therefore hold that the Employment Agreement must be construed according to the plain and unambiguous language of Section Six which fixes O'Connor's severance compensation at $50,000.

For the foregoing reasons, the debtor's motion to reduce the claims filed by O'Connor to the amount of $18,750[5] is granted.

SO ORDERED.

---

5. Since O'Connor has already received $31,250 in severance payments, the proper amount of his claim is the difference between the fixed $50,000 sum and $31,250 or $18,750.