In re **KLINE ENGINEERING, P.C.** **d/b/a Professional Testing Laboratories, Debtor.**

**Bankruptcy No. 198–17162–260.**

United States Bankruptcy Court, E.D. New York.

April 1, 1999.

Pinks & Arbeit, Hauppauge, NY, by Amy Boyle Lewis, for debtor.

Levi & Lubarsky, New York City, by Howard B. Levi, for Allstate Financial Corporation.

MEMORANDUM OPINION

CONRAD B. DUBERSTEIN, Chief Judge.

This is a motion by Kline Engineering, P.C., (hereinafter "Debtor" or "Kline"), a Chapter 11 Debtor, to expunge a claim filed by Allstate Financial Corporation (hereinafter "AFC"). The motion is denied.

## FACTS

Kline Engineering, P.C., filed a petition for relief under Chapter 11 of the Bankruptcy Code on May 26, 1998. Since the filing, the Debtor has remained as Debtor-in–Possession.

On July 26, 1998, AFC filed Proof of Claim No. 23 indicating it held a secured claim in the amount of $3,834.65 supported by copies of an application for financing, UCC–1 financing statements and a proposal for a financing agreement. The Debtor was unaware of the filing of that claim. On July 27, 1998, the Debtor, absent any knowledge of AFC's Claim No. 23 filed a secured Proof of Claim No. 26 in the amount of $4,169.15 on behalf of AFC pursuant to 11 U.S.C. § 501(c).[1] The Debtor had filed that claim in order to bring on the present motion to expunge. As it hereinafter appears, the Debtor ultimately modified the motion to the extent that it opposed the allowance of AFC's claim as a secured claim and consented to it being allowed as an unsecured claim for $3,834.65.

It is undisputed that prior to this bankruptcy filing, the Debtor applied to AFC seeking a secured loan. An application for such financing was signed by Arnold R. Kline, as president of the Debtor, on March 17, 1997. The application states, in pertinent part:

> To induce AFC to commence its due diligence investigation with respect to this application for funding, [Kline] irrevocably agrees to pay to AFC a one-time, non-refundable application fee of $6,500 (the "Application Fee"), which Application Fee is due and payable in full with the submission of this application. In addition to the Application Fee, **whether or not a funding takes place, [Kline] agrees to pay** (or reimburse) **AFC in immediately available funds for all fees and expenses** (including, without limitation, legal fees and expenses allocable to AFC's internal counsel) **incurred by AFC in connection with or related to AFC's due diligence investigation** ("the Diligence Fees and Expenses"). The Diligence Fees and Expenses may include (but shall not be limited to) fees and expenses associated with Uniform Commercial Code lien searches and filings, judgment and tax lien searches and bankruptcy searches (excluding one set of searches and filings against [Kline's] principal name and location), out-of-pocket collateral review fees and expenses and, where applicable, fees and expenses associated with equipment, inventory and/or real estate appraisals, environmental assessments, title insurance and outside legal fees and expenses.

(Movant's Ex. C at 8.) (emphasis added). In the aforesaid paragraph of the application, underneath the number $6,500, the statement "$1,500 w/Application" is typewritten onto the application. AFC and the Debtor never finalized a secured loan agreement between them.

AFC alleges that an Accounts Receivable Factoring and Security Agreement (hereinafter "the Factoring Agreement") was executed on or about March 20, 1997. Attached as Exhibit C to AFC's Opposition to Motion to Expunge Claim is a copy of the Factoring Agreement which is unsigned by either party. The names of the parties that appear in the contract are Kline Engineering, P.C. and AFC. In an affidavit by George N. Demas, Associate

---

**1.** 11 U.S.C. § 501(c) states, "(c) If a creditor does not timely file a proof of such creditor's claim, the debtor or the trustee may file a proof of such claim." 11 U.S.C. § 501(c).

General Counsel of AFC, he states that according to AFC's records, an agreement identical to the one attached as Exhibit C was executed on or about March 20, 1997. The Debtor does not mention this Factoring Agreement in its papers so this Court can only assume it does not dispute the execution of said agreement. The Factoring Agreement, in paragraph 7(a) entitled "Grant of Security Interest" states:

> In order to secure the prompt payment, performance and observance in full of the Obligations (as defined below), [Kline] hereby sells, assigns, pledges, transfers, sets over and grants to AFC a continuing security interest in and lien on all of [Kline's] right, title and interest in, to and arising under, and all amounts payable with respect to, the Collateral (as defined below).

(Respondent's Ex. C at 7.) It further defines Obligations as "any and all present and future payment, reimbursement and other performance obligations of [Kline] (or its affiliates) to AFC (or its affiliates), whether arising under this Agreement, any Related Agreement or otherwise, however evidenced...." *Id.* There was also an addendum to the Factoring Agreement that contains a similar reimbursement obligation as the application. This addendum, attached as part of Exhibit C to AFC's Opposition to Motion to Expunge Claim, like the Factoring Agreement, is an unsigned copy. In pertinent part, the addendum states:

> 4. To induce AFC to commence its due diligence investigation with respect to the transactions under the Agreement and this Addendum, [Kline] will pay to AFC a one-time, non-refundable application fee of $6,500.00 (the "Application Fee"), $3,000.00 of which has been previously paid and $3,500.00 of which will be deducted from [Kline's] first funding.... In addition to the Application Fee, whether or not a funding takes place, [Kline] agrees to pay (or reimburse) AFC in immediately available funds for all fees and expenses (including, without limitation, legal fees and expenses allocable to AFC's internal counsel) incurred by AFC in connection with or related to AFC's due diligence investigation (the "Diligence Fees and Expenses").

(Respondent's Ex. C at 19–20.)

The Debtor, at AFC's request, executed UCC–1 financing statements in conjunction with its application for financing. The Debtor claims it was never advised by AFC that AFC would be filing the UCC–1 financing statements. In addition, the Debtor states it never consented to the UCC–1 financing statements being filed. AFC filed a UCC–1 financing statement with the New York State Secretary of State on April 7, 1997, which was assigned the number 069040. On April 8, 1997, AFC filed a UCC–1 financing statement with the Clerk of Nassau County, where it was assigned the number UCUC 97005946.

The instant motion to expunge both claims, Nos. 23 and 26, was brought by the Debtor pursuant to 11 U.S.C. § 502(b).[2] The Debtor initially argued that both Proofs of Claim should be expunged because it did not owe AFC anything. In its reply papers submitted after the hearing, the Debtor does admit that it would be liable for the fees and expenses associated with the application, but that the amount is not secured because it never received value from AFC pursuant to UCC 1–201(44), which is hereinafter discussed. Therefore,

---

**2.** 11 U.S.C. § 502(b) states:
[I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured....
11 U.S.C. § 502(b).

the Debtor seeks to reclassify Proof of Claim No. 23 as an allowed, unsecured claim and to expunge Proof of Claim No. 26, which it had submitted. In addition, the Debtor seeks an order directing the New York State Secretary of State and the Clerk of Nassau County to expunge the UCC–1 financing statements filed.

### Discussion

■ A filed proof of claim is *prima facie* valid provided it complies with the requirements of the Bankruptcy Code including Federal Rule of Bankruptcy Procedure 3001. FED.R.BANKR.P. 3001(f). Once the moving party submits sufficient evidence to rebut the presumption of validity of the claim, the claimant carries the burden of persuasion. *In re Johnsbury Trucking Co., Inc.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y.1997). In this case, AFC, the claimant, filed a proof of claim in compliance with the provisions of the Bankruptcy Code. The Debtor rebuts the validity by arguing that AFC did not give value in return for the financing statements.

■ The Court notes that the application for financing as well as the Factoring Agreement both contain choice of law provisions stating the matters will be governed by Virginia law. A contractual choice of law clause will be followed by a New York court unless that choice "would be an affront to the law or public policy of some state with more significant contact with the matter in dispute." *Matter of Penn–Dixie Industries, Inc.*, 22 B.R. 794, 797 (Bankr.S.D.N.Y.1982). In this case the relevant sections of the UCC are identical as enacted by Virginia and New York. Therefore, there is no substantive problem in following the choice of law clause by applying the sections of the UCC as enacted in section 8 of the Virginia Code.

■ This dispute really comes down to whether or not the Debtor received "value" in exchange for the filing of the UCC–1 financing statements. The Debtor argues that AFC did not give value in return for the financing statements and therefore

is not a secured creditor. The Uniform Commercial Code, as enacted in the Virginia Code at § 8.1–201(44), provides a definition of "value" by stating: "a person gives 'value' for rights if he acquires them ... (d) generally, in return for any consideration sufficient to support a simple contract." VA.CODE ANN. § 8.1–201(44).

The Debtor cites two cases, *McCorhill Publishing, Inc. v. Greater New York Sav. Bank (In re McCorhill Publishing, Inc.)*, 86 B.R. 783 (Bankr.S.D.N.Y.1988) and *Heidelberg Eastern, Inc. v. Weber Lithography, Inc.*, 213 A.D.2d 127, 631 N.Y.S.2d 370 (2nd Dept.1995), for the proposition that AFC does not have a security interest that attached to the Debtor's property because AFC failed to give anything of value in exchange for the financing statements. However, *Heidelberg* merely holds that a party may file a financing statement before a security agreement is made and that the security interest will not attach until all the steps for perfection have taken place. 213 A.D.2d 127, 631 N.Y.S.2d at 372. *McCorhill* is also inapposite on this point because the reason that court stated that the defendant had never been entitled to file a financing statement was that the predicate loan agreement in question was usurious and therefore a void transaction. 86 B.R. at 794–95.

AFC disagrees with the reclassification of its claim by arguing it gave value by agreeing to accept the Debtor's application for a financing agreement, in its conducting of a due diligence review of that application, and by paying expenses incurred in conducting the review. This, AFC explains, was performed in exchange for the Debtor's agreement to pay the application fee and to reimburse AFC for its expenses. AFC claims it relied on the Debtor's promise to pay the application fee and due diligence expenses and that this constituted sufficient consideration to support a contract. This obligation, according to AFC, was secured when the Debtor executed the Factoring Agreement, which contained language granting AFC a continuing security interest in all of the Debtor's assets in order to secure all of its

existing and future obligations to AFC. AFC points to the wording of the Agreement in defining the term obligations: "any and all present and future payment, reimbursement and other performance obligations of [the Debtor] to AFC whether arising under [the Factoring Agreement], any related Agreement or otherwise, however evidenced." (Respondent's Ex. C at 7.) This, AFC argues, is sufficient for this court to deem it a secured creditor for the amount of the Debtor's obligation owed to it from the application process.

This Court agrees with AFC's argument. AFC clearly gave value by considering the application for financing and incurring expenses in relation to the necessary due diligence performed. In return, the Debtor agreed to pay an application fee, part of which has already been paid, the balance of which AFC is seeking here.

The next inquiry to be made is whether the execution of the subsequent Factoring Agreement secured the balance of the application fee. Section 8.9–203 of the Virginia Code governs how a security interest attaches. This section sets forth the following requirements: "(a) ... the debtor has signed a security agreement which contains a description of the collateral ...; (b) value has been given; and (c) the debtor has rights in the collateral." In the instant case, the Debtor complied with the requirements of § 8.9–203 in the following ways: (1) the Debtor does not dispute that it signed the Factoring Agreement which constitutes the security agreement required by § 8.9–203(a), (2) as was discussed earlier, this Court has determined that value was given as required by § 8.9–203(b), and (3) it is uncontested that the Debtor has rights in the collateral, pursuant to § 8.9–203(c).

In addition, any question raised by the fact that the financing statements were filed with the New York State Secretary of State and the Clerk of Nassau County before the Factoring Agreement was signed is clarified by VA.CODE ANN. § 8.9–402, which states in pertinent part, "A financing statement may be filed before a security agreement is made or a security interest otherwise attaches." VA.CODE ANN. § 8.9–402.

It appears to the Court that value was given to the Debtor in the form of consideration of their application for financing and the due diligence AFC undertook in that process. This, in conjunction with the wording of the Factoring Agreement stating that it was securing previous obligations does convince this court that this obligation of the Debtor was secured.

### Conclusion

1. This Court has jurisdiction over the instant matter pursuant to 28 U.S.C.A. §§ 157 & 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges for the Eastern District of New York, dated August 28, 1986. Debtor's motion is a core matter within 28 U.S.C.A. § 157(b)(2)(B).

2. Debtor's motion to expunge Proof of Claim # 26 is granted. Debtor's motion to expunge and/or reclassify as unsecured Proof of Claim # 23 is denied. Proof of Claim # 23 is allowed as a secured claim in the amount of $3,834.65.

3. AFC is directed to settle an order in conformity with this decision.